UNITED STATES, Appellee

v.

THEODORE J. SOUKUP, Private, U. S. Army, Appellant

2 USCMA 141, 7 CMR 17

No. 533

Decided January 23, 1953

 

Myron G. Ehrlich, Esq., and Joseph Sitnick, Esq., for Appellant.

LT. COL. Thayer Chapman, U. S. Army, and CAPT. Irvin M. Kent, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

Appellant stands convicted by general court-martial, convened at Kapyong, South Korea, under two charges, one specifying misbehaviour before the enemy, through cowardly conduct, in wrongfully failing to join the forward elements of his company, a violation of the Uniform Code of Military Justice, Article 99(5), 50 USC § 693, and the other alleging willful disobedience of the lawful order of a superior officer, a violation of Article 90 of the Code, 50 USC § 684. The conviction and sentence adjudged thereon have been approved by the convening authority and affirmed by a board of review. This Court granted appellant's petition for review to consider numerous assignments of error raised by him.

II

It is argued that the first specification did not allege an offense. The wording of that specification is as follows:

". . . Private Theodore J. Soukup, United States Army, Company D 9th Infantry Regiment, APO 248, at Sayapyong, North Korea, on or about 14 October 1951, before the enemy, was guilty of cowardly conduct, in that he wrongfully failed to join the forward elements of his company as it was his duty to do."

Paragraph 178e of the Manual for Courts-Martial, United States, 1951, provides that "refusal or abandonment of a performance of duty before or in the presence of the enemy as a result of fear" constitutes the offense of cowardly conduct. This Court also made it clear that *fear* is the keystone of that offense in United States v. Yarborough and Marshall (No 443), 5 CMR 106, decided September 12, 1952. The infirmity in the specification assailed by appellant is that it was not alleged that the "wrongful" failure of accused "to join the forward elements of his company as it was his duty to do" was the result of fear. Whether the omission of a specific reference to fear in the specification would itself require reversal of the conviction, we need not now decide, for a serious deficiency in the instructions has been brought to our attention by defense counsel. With regard

to the elements of the offense of cowardly conduct, the law officer said simply:

"As to the specification of Charge I [the elements of the offense are]: (a) That the accused committed an act of cowardice, as alleged; and (b) that this act occurred while the accused was before or in the presence of the enemy.

"The court is also referred to paragraphs 178a and 178e, pages 331 and 333 of the manual."

No mention was made, it will be noted, of the requirement that the acts attributed to accused must have been the product of fear on his part to warrant conviction. Nor was this shortcoming remedied through the instructional reference to specification language via the phrase "as alleged." United States v. Williams (No 133), 2 CMR 92, decided February 21, 1952. Here, it will be observed, the act regarded as cowardly took the form of a failure on the accused's part to join his company—a neutral act attributable to a wide variety of compulsions. It is possible that the members of the court would surmise, from the reference in the instructions to "an act of cowardice," that proof of fear *was* necessary. It is also conceivable that, as officers in the military service, they would know that this mental state *was* the critical element of the offense charged. On the other hand, they may also have believed that failure to obey an order to join the forward elements of one's company alone would constitute cowardly conduct —whatever its motivating force. We cannot approve an instruction which requires that we speculate on whether the court understood clearly all the necessary elements of the offense charged. The Code and the Manual require that instructions be given as to *all* elements of an offense. Uniform Code, supra, Article 51(c), 50 USC § 626; Manual, supra, paragraph 73a. United States v. Clay (No 49), 1 CMR 74, decided November 27, 1951; United States v. Keith (No 503), 4 CMR 85, decided July 30, 1952. On the question of prejudice, it must be apparent that where there is doubt of whether the court was properly apprised of the necessary elements, this uncertainty must be resolved in favor of the accused person. Particular danger of prejudice may be said to exist in the present case in view of the evidence adduced at the trial. While this furnished a minimum basis for the finding of a *fear* motive, at the same time it offered explicitly an alternative explanation of the accused's misconduct. Thus it was of paramount importance that the court be informed accurately of the presence of fear among the ingredients of the offense for which he was on trial. This is not to relate too closely the factors of instructional completeness and evidential sufficiency. It is one thing to permit the presence of evidence to remedy a defective charge— which, of course, we cannot do—and quite another to rely on the former to point up imperfections in the latter. Of course, the law officer's reference to Manual paragraphs cannot be held to stop gaps otherwise present in instructions. United States v. Gilbertson (No 318), 4 CMR 57, decided July 22, 1952; United States v. Cromartie (No 374), 4 CMR 143, decided August 6, 1952; United States v. Moreash (No 715), 5 CMR 44, decided August 27, 1952; United States v. Kubel (No 229), 5 CMR 73, decided August 29, 1952.

For this error—offering a fair risk of substantial prejudice—the conviction under the first specification cannot be sustained. This obviates the necessity for consideration of other assignments of error in so far as they relate to Charge I and its specification.

III

The specification of Charge II alleged that accused "having received a lawful command from Captain Walter S. Culpepper, his superior officer, to join the forward elements of his company, did . . . willfully disobey the same."

Defense contends, first, that the evidence was insufficient to sustain a conviction under this specification. We do not deem an elaborate review of the evidence necessary. Suffice it to say that there was more than ample competent testimony to establish the fact that the order alleged was given, and that the accused refused to comply

**143**

therewith. Much is made of the inability of witnesses to relate the specific language in which the order was couched. In the considerable majority of cases this precision in testimony would not be forthcoming from a careful and honest witness. The important step is to establish the fact that the order alleged was given, and that the accused disobeyed it willfully. For this purpose it is not necessary in the ordinary case to prove in detail the particular words of the order, or of the wrongdoer's oral rejection thereof, if any. We recognize the possible necessity for verbal exactitude in the unusual situation—but the present is not one of these. Defense also argues that it was error to permit a Government witness to characterize the disobedience of accused as "arrogant." This is not necessarily so, but, assuming for the moment that allowances of the characterization was error, it surely would not require reversal. Willful disobedience of an order constitutes such disobedience regardless of whether it is accompanied by an "arrogant" manner, or is attended by the most respectful demeanor—as in United States v. Trani (No 106), 3 CMR 27, decided April 9, 1952. Other deficiencies in the evidence are asserted which do not warrant repetition here. We have considered them and have determined that they are without merit.

Appellant defense counsel next contends that accused was deprived of his right to the *effective* assistance of counsel. In support of this assertion, he approaches the matter negatively and points to many actions defense counsel did not take during the course of the trial. In the last analysis, his argument simply invites a trial at this level, not of the accused, but of the professional judgment and capacity of his counsel. We cannot possibly accept the invitation. Defense counsel at the trial was duly appointed and certified as qualified under the Code, Article 27(b), 50 USC § 591. We do not regard it as necessarily significant that he did not manifest febrile activity at the court-martial hearing—for what counsel may do in such a setting may vary inversely with the strength of the prosecution's case

144

and the soundness of its presentation. Carried to its logical conclusion, counsel's argument with respect to this contention would require out-of-hand condemnation of a lawyer who recommends to an accused that he plead guilty. Sometimes, however, counsel may feel—even in a situation suggesting the propriety of such a plea—that it would be preferable to require the Government to carry the burden of proof of its allegations. This may well have been the situation here. The objections as to which defense counsel at the trial is charged with failure were, in essential respects, trivial. We expressly refuse to adopt a view which regards the administration of justice as a competition whose outcome depends on the relative energies and wits—or their external evincement —of counsel. Where there is a showing that assigned counsel was obviously incompetent, a different result will follow certainly—but no such condition is found here.

Apart from the principal one mentioned earlier, numerous errors are attributed to the instructions of the law officer. We shall consider only selected items; the others are patently without merit. Although the law officer repeatedly told the court that it must be convinced beyond reasonable doubt of the guilt of accused, he did not explicitly—and in detail—define what constitutes a "reasonable doubt." This is claimed as fatal error. We disagree. Neither Article 51(c) of the Code, supra, nor paragraph 73b of the Manual, supra, demands expansion of the charge on this point beyond the requirement of a statement that the evidence must establish guilt beyond a reasonable doubt. The latter source specifically states that "ex-planatory matter may, *but need not*, be added." (Emphasis supplied) Here, defense counsel did not request that "reasonable doubt" be defined. His failure to do so removes the point from consideration on appeal. Although we think some definition of "reasonable doubt" is desirable in many cases, failure to offer such instruction, in the absence of request, cannot provide the basis for reversal in this Court.

Defense also argues that the law officer in connection with Charge II should have defined the term "willfully." Except in the unusual case, however, we do not think such explanation called for or necessary. "Willful" is a term in common use, with a generally accepted content of meaning, hardly requiring definition. Especially does this view commend itself to us as the problem is met in a military justice situation. While we will always demand assurance that the court was instructed in all essential particulars, we are equally anxious to relieve law administration in a combat theater of any burden of formalism. In the present evidential setting we are sure the term required no definition.

It is also said that the law officer erred in not instructing the court specifically on the elements of included offenses. What necessarily included offense might properly have been found on the basis of the evidence adduced is not indicated. We have concluded that no other offenses were raised by the evidence as reasonable alternatives to that charged.

Finally, it is advocated that Charges I and II constitute an unreasonable multiplication of charges arising from the same transaction. First, we should point out that no error would necessarily result from charging and convicting the accused of offenses arising out of the same transaction—even though the offenses be not separate. Manual, supra, paragraph 74b(4). Difficulties arising from an allegation of multiple offenses growing out of what appears to be a single transaction are fully met in connection with principles having to do with the imposition of sentence. Only if the offenses are separate, may an accused be sentenced for each. Manual, supra, paragraph 76a(8). We shall, therefore, examine the charges in this case through the spectacles of susceptibility to individual sentences. The general test of separateness, as stated in paragraph 76a(8), supra, is that offenses are to be treated as separate if each "requires proof of an element not required to prove the other." Although this standard may not serve accurately and safely in all situations, it is fully effective when applied to the facts of the present case. Here the accused, who had been stationed with his company at the front, was discovered some three or four miles to the rear. When ordered to return to his unit he failed to do so. The result is that two separate duties were thereby breached—the one to *remain* with his company on the line; the other to obey the direct and specific order to *return* thereto. To sustain the charge of cowardly conduct, it would certainly not have been necessary to prove the breach of the duty to obey the direction to return to the front—for the reason that the accused had previously been assigned to the line by a separate and distinct order. The breach of the latter, if motivated by fear, would alone constitute cowardly conduct. Likewise, it could hardly have been necessary to prove, in connection with the charge of willful disobedience of a lawful order, that the accused had been guilty of cowardly conduct in failing to remain with the forward elements of his company—a duty imposed by an utterly different directive. We conclude, therefore, that the offenses charged in this case were entirely separate.

## IV

In accordance with the foregoing, the decision of the board of review is reversed as to Charge I and affirmed as to Charge II. The record is remanded to The Judge Advocate General for rehearing as to Charge I, or for such other action as he may deem appropriate and not inconsistent with the views expressed herein.

Chief Judge QUINN and Judge LATIMER concur.