UNITED STATES, Appellee

v.

ALBERT J. VANSANT, Private E-2, U. S. Army, Appellant

3 USCMA 30, 11 CMR 30

No. 1601

Decided July 3, 1953

Lt Col George E. Mickel, U. S. Army, and 1st Lt Richard M. Hartsock, U. S. Army, for Appellant.

Lt Col Thayer Chapman, U. S. Army, Lt Col William R. Ward, U. S. Army, and 1st Lt Martin Blackman, U. S. Army, for Appellee,

### Opinion of the Court

George W. Latimer, Judge:

The accused stands convicted of willful disobedience of an order of a superior warrant officer, in violation of Article 91, Uniform Code of Military Justice, 50 USC § 685. The court-martial sentenced him to a dishonorable discharge, total forfeitures, and confinement for eighteen years. The convening authority reduced the confinement to fifteen years, but otherwise approved, and a board of review after further reducing the confinement to ten years, affirmed. We granted the accused's petition to determine whether the evidence was sufficient to sustain the verdict.

Around midnight of April 24, 1952, near the front lines in Korea, a warrant officer in charge of a rear command post was told by his company commander to search the rear area for the accused. Early that morning, the accused had returned to the rear area with a group of soldiers for the purpose of taking a shower bath. He remained there, apparently contrary to instructions, and he was discovered that night asleep in a tent in that area. He was awakened, taken before the warrant officer and ordered to proceed forward to join his platoon. He replied he wanted to go on sick call. The warrant officer informed him that he could go on sick call at the platoon aid station which was in the forward area. Nevertheless the accused insisted he wanted to go on sick call in the rear area. The warrant officer repeated his order and further directed the accused to be back with his platoon by 2:00 a.m. The accused replied that he refused to go. There was a well-defined and well-traveled trail between the rear command post and the forward element but, in so far as the warrant officer knew, it had not been traveled alone by anyone after dark. The usual procedure during darkness was to send not less than two men and the warrant officer had intended to send the mail clerk back with the accused, but this information was not conveyed to him during the conversation.

The accused, after being fully apprised of his rights, elected to testify in his own behalf. He stated that the warrant officer had given him a direct order to go back on the hill but he did not obey it because he had been having heart trouble; that he wanted to go on sick call; that he was fully aware of the order which was given to him to

**31**

return to his platoon, but he did not want to travel the trail alone at night; that he understood there was a rule that one man would not travel the trail after dark; that he did not mention to the warrant officer the fact that he was objecting for that reason; that he came down off the hill about 5:30 in the morning, had a shower, ate breakfast, lunch and supper; that he did not go back on the truck which he knew was to leave at 5:00 p.m.; and, that he knew he could get medical attention in the forward area.

Accused attacks the sufficiency of the evidence to sustain the finding on the grounds that the order given to him was illegal, and that it was one to be executed in the future. To support the first contention he relies upon Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, § 888, page 575, which states an order is illegal if it is "repugnant to .. . . the law or *usage* of the military service." The difficulty with this assigned error is the evidence does not establish military usage and even were we to assume it did, accused did not refuse to obey on that basis. The warrant officer stated there was no order that more than one man must travel the trail after dark. The most that could be claimed in this connection is that a rumor had spread around the chow table to that effect, and if the accused was to go alone this was the first time one man had been dispatched after dark. Assuming a standard operating procedure had been adopted by the company, a generally accepted practice may be modified by order of the company commander, particularly when as here, the accused was solely responsible ·for the necessity of night travel. Had he accompanied the other soldiers as he should have done, the order would have been unnecessary. But more than that, accused did not refuse to obey for that reason as the discussion never reached that point. He was not informed that he would be required to travel alone and the warrant officer never intended to have him proceed without company. It is true the officer did not inform him that another soldier would be going along but this is of no importance· in this setting as the accused refused to obey the order for a different reason and the officer, without being informed, would have no way of knowing that accused was objecting because he would be unaccompanied. Unless that reason was advanced by the accused, it would not be anticipated by the officer. In the final analysis the order was not illegal, and we can only charge the warrant officer with knowledge of the reason for refusal as told to him by the accused. If we accept the latter's version of the conversation, his announced reason was illness. The duty to obey was on him and to justify his breach of that duty he must make some reasonable showing that his physical condition gave him good cause to refuse. We find nothing in this record which approaches such a showing.

Accused next contends the order given was to be executed in the future, ▮ and therefore not the type which is punishable under Article 91, supra. We find little merit in that contention. At approximately 12:30 a.m., the accused was told to return to his platoon and be there by 2:00 a.m. Obviously, this required immediate compliance. A certain amount of preparation was necessary and accused had to walk a mile and one-quarter to reach his destination., The order·did nothing more than take those elements into consideration. The acts, conduct, and attitude of the accused show clearly he understood that he was to depart forthwith. The fact that he was ordered out of bed after midnight, directed to report to the warrant officer, and ordered to report to his platoon within one and one-half hours would convince the most sceptical that immediate compliance was necessary. Moreover, accused's contention that his refusal was in part based on not wanting to travel alone during hours of darkness indicate a knowledge that he was expected to depart forthwith.

Accused lastly contends there was no showing of a willful refusal on his part. ▮ An intentional defiance of authority may be manifest in a number of ways; it may be by deliberately omitting to do that which is ordered (Manual for

Courts-Martial, United States, 1951, paragraph 169b) ; it may be established by an express refusal to obey (United States v. Stout (No. 497), 1 USCMA 639, 5 CMR 67, decided August 27, 1952) ; or it may be exhibited by simple noncompliance or doing the opposite (CM 348827, Brown, 2 CMR 300). One or more of those manifestations are a reason in the instant case. The accused, after receiving at least two orders to proceed, remained steadfast, informed the officer he refused to comply, failed to take any action suggesting an intent to comply, and kept repeating his desire to go on sick call, even after being informed he could return to his platoon and consult the doctor there. The accused testified as to receiving the order, that he understood it, and that he did not comply. The record is devoid of any evidence which suggests any basis in reason for that noncompliance. These facts amply justify a finding by the court-martial that his refusal was a willful, deliberate defiance of authority.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring) :

I agree with the majority in the conclusion they have reached at any rate— and my concurrence may even be complete. This indecision arises from my failure to understand fully the object of my brothers in referring repeatedly to the fact that the accused did not specifically assign as his reason for disobedience here his unwillingness to travel alone the trail to the forward elements of his organization—that is, his unwillingness to obey an order which was regarded by him as contrary to law, a military usage, a standing operating procedure or what you will. If they mean to suggest that failure to assign illegality as the reason for disobedience of an illegal order operates to deprive an accused of illegality as a defense in a case like the present one, I must disagree with them. To my mind, one's reason—assigned or undisclosed— for disobedience of an order which is illegal is quite immaterial. In such a case the accused may assign any reason or none. If an order is contrary to law, a recipient is simply not criminally responsible for refusing or failing to carry it out—although he may conceivably be guilty of other offenses growing out of the same transaction. Of course, I do not at all believe that the order with which we are concerned here was an illegal one. However, at some time in the future we may have to deal in a similar setting with one that is.

Of course, it is possible—even probable—that the majority do not mean to say that which I have attributed to them, and that their references to assignment of reasons by an accused are intended to serve some other purpose. On this assumption, I can have no reservations. However, I am anxious that we not be misunderstood.