UNITED STATES, Appellee

v.

CONSTANTINE S. DEJEWSKI, Private First Class,
U. S. Army, Appellant

3 USCMA 53, 11 CMR 53

No. 2055

Decided July 10, 1953

LT COL Herman P. Goebel, Jr., U. S. Army, CAPT John M. Hardage, U. S. Army, 1ST LT Ivan E. Barris, U. S. Army, and 1ST LT Bernard Landman, Jr., U. S. Army, for Appellant.

COL Allan R. Browne, U. S. Army, LT COL William R. Ward, U. S. Army, LT COL Thayer Chapman, U. S. Army, and 1ST LT Martin Blackman, U. S. Army, for Appellee.

### Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was convicted by general court-martial of aggravated assault and assault and battery, in violation of Article 128, Uniform Code of Military Justice, 50 USC § 722. He was sentenced to dishonorable discharge, total forfeitures and confinement at hard labor for two years. The convening authority approved, and the board of review affirmed the findings and sentence. We granted the accused's petition for review to determine:

"1. Whether the law officer erred in failing to define 'grievous bodily harm'.

"2. Whether the law officer erred in not instructing on the elements of lesser included offenses."

No question is presented by the findings as to the additional charge. Accordingly, the details of that offense are not reported. The specification of the charge alleges that the accused did:

". . . commit an assault upon Private First Class Dowell Watson . . . by striking him on the head and body with his fists and by kicking him and thereby did intentionally inflict grievous bodily harm upon him, to wit: a fractured jaw."

This charge grew out of a series of incidents occurring in a German gasthaus. Private Watson offered to buy a drink for a young woman seated next to him at the bar. This offer was protested by the accused, her companion of the evening. During the argument which followed, blows were exchanged between Watson and the accused and neither desisted until a noncommissioned officer separated them. Shortly thereafter Watson and a member of the accused's party became involved in a fight which was similarly stopped. After peace had been restored, Watson advanced upon the accused's table and without provocation struck one Corporal Kawashima in the face with his fist. Thereupon he fled from the gasthaus with the accused and Corporal Kawashima in pursuit. Overtaking him in the street, his pursuers punched him about the face and body until Watson fell to the sidewalk. While in this position he covered his head with his hands and pleaded with the accused and Kawashima to stop. Both continued the assault, however, by kicking him until he lost consciousness. As a result of these blows, Watson suffered a fractured jaw, numerous cuts and bruises, lost two teeth, and the sight of one eye was impaired. These injuries necessitated his hospitalization for twenty-three days.

At the conclusion of the trial the law officer outlined the essential elements of assault in which grievous bodily harm is intentionally inflicted, in accordance with the "Proof" portion of paragraph 207b, Manual for Courts-Martial, United States, 1951, and added:

"I might refer you incidentally to paragraph 27b(2) [sic] on page 372 of the Manual for Courts-Martial, 1951, which you may turn to and refer to during your deliberations upon Charge I, for your own convenience."

The following colloquy then occurred:

"DEFENSE (Lt. Walker): Excuse me, sir, are you including that paragraph within your instructions?

"LAW OFFICER: Yes, incidentally, I said, for their convenience, in the event they care to review the elements.

"DEFENSE (Lt. Walker): The defense, at this time, requests that the law officer instruct orally the court if he intends them to be instructions.

"LAW OFFICER: I will let the record speak its piece. I am satisfied with what I have said."

The defense concedes that the foregoing comments of the defense counsel do not constitute a request for further instructions on "grievous bodily harm." It is contended, however, that grievous bodily harm is not self-defining but has a significant legal meaning unknown to the average court member. Consequently, in the absence of any clarifying instructions, the court lacked a legal standard by which to measure the conduct of the accused.

We have heretofore ruled that words of art require additional explanatory instructions. United States v. Ollie C. Williams (No. 251), 1 USCMA 231, 2 CMR 137, decided March 14, 1952; United States v. Charles Richard Jones (No. 426), 1 USCMA 276, 3 CMR 10, decided April 4, 1952. However, it is universally held that it is not necessary to define words in common usage which are applied in the course of instructions in their conventional sense, for the court must be presumed to know their general and proper significance.

United States v. Hunter (No. 359), 2 USCMA 37, 6 CMR 37, decided October 17, 1952. Webster's New International Dictionary, 2d ed, defines grievous as "causing, or characterized by, physical pain or suffering; injurious; distressing; as, a *grievous* wound; *grievous* punishment; hence, severe; intense; as, *grievous* pain." In explanation of this offense paragraph 207b(2) of the Manual, supra, states:

"'Grievous bodily harm' does not include minor injuries, such as a black eye or a bloody nose, but does include fractured or dislocated bones, deep cuts, torn members of the body, serious damage to internal organs and other serious bodily injuries."

The term "grievous" is used in Article 128, supra, in its conventional sense and therefore requires no definition as an essential part of the instructions. State v. Ockij, 165 Iowa 237, 145 NW 486, 487–488:

". . . A great bodily injury is an injury to the person of a more grave and serious character than an ordinary battery, but it cannot be definitely defined."

See also State v. Graves, 352 Mo 1102, 182 SW2d 46, 56.

Therefore, there was no obligation upon the law officer to define the term "grievous bodily harm," especially in the absence of a request for such definition, and, no error resulted from his failure to do so. United States v. Soukup (No. 533), 2 USCMA 141, 7 CMR 17, decided January 23, 1953; United States v. Mary G. Long (No. 464), 2 USCMA 60, 6 CMR 60, decided December 3, 1952.

Following the colloquy set forth above the law officer stated:

". . . According to the opinion of the law officer, there are three lesser included offenses included among the major charge referred to and the lesser included offense [sic] are:

"First, assault likely to produce grievous bodily harm by the force and by the means that is set out in the said charge and its specification.

"Second, assault and battery.

"Third, simple assault."

The Government argues that these instructions sufficiently define the essential elements of assault ■ likely to produce grievous bodily harm, and the second and third offenses were not reasonably raised by the evidence. The sole contention of the accused is that the evidence placed the existence of a fractured jaw in dispute and the lesser included offense of assault and battery was therefore in issue. In this particular, the defense relies upon evidence that three days after the incident Private Watson was able to converse with one Sergeant Hunt, who observed no bandage or braces about his face.

We need not determine whether these instructions sufficiently describe the essential elements of assault likely to produce grievous bodily harm. We assume, without deciding, that the instructions on the lesser included offenses were insufficient. Our sole inquiry, then, is whether any lesser offense was fairly raised by the evidence as a reasonable alternative to that charged. Unless a lesser offense was so raised, the absence of instructions thereon does not constitute error. United States v. Roman (No. 191), 1 USCMA 244, 2 CMR 150, decided March 19, 1952; United States v. Banks (No. 382), 1 USCMA 479, 4 CMR 71, decided July 24, 1952; United States v. Stout (No. 497), 1 USCMA 639, 5 CMR 67, decided August 27, 1952; United States v. Baguex (No. 699), 2 USCMA 306, 8 CMR 106, decided March 13, 1953.

The undisputed evidence depicts a vicious assault, persisted in—in fact increasing in intensity—after the victim lay helpless upon the sidewalk. As a result of this beating the victim was hospitalized for twenty-three days. Although the assertion of the victim that his jaw had been fractured ■ was uncorroborated by medical evidence, this testimony was competent evidence of the extent of his injuries. State v. Allen, 246 SW 946, 948; State v. Johnson, 23 Wash2d 751, 162 P2d 440, 441. The testimony relied upon by the defense

to rebut the evidence of fracture was insufficient for that purpose. As indicated in "The Therapy of Jaw Fractures and of Face Injuries," Schaeffer and Skinner, 105 Journal of the American Medical Association, 1679, 1680 (1935), absence of bandages or braces does not indicate absence of fracture:

"With slight displacement, not great enough to cause nonunion or deformity, the only treatment necessary is to advise a soft diet and rest. These cases as a rule get along well and, when union has taken place, any change in the relationship of the two arches may be corrected by the proper construction of artificial dentures. If the displacement is extensive, it may be reduced by direct or circumferential wiring."

Consequently, the evidence of the fracture being clear and unrebutted, "grievous bodily harm" was established as a matter of law. It being equally clear that the accused's actions were intentional, and calculated to produce such a result, the evidence sufficiently established the existence of the specific intent essential to the offense charged, and no inference that a lesser offense was committed is possible. See United States v. Backley (No. 1588), 2 USCMA 496, 9 CMR 126, decided May 12, 1953.

Accordingly, there was no obligation to instruct on the elements of any lesser included offense, and necessarily, no error resulted from the absence of such instructions.

The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.