UNITED STATES, Appellee

v.

ROBERT G. SHARP, Private E–2, U. S. Army, Appellant

5 USCMA 580, 18 CMR 204

No. 5863

Decided April 1, 1955

LT COL Harley A. Lanning, U. S. Army, for Appellant.

LT COL Thomas J. Newton, U. S. Army, and 1ST LT William G. Fowler, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

Following trial by a general court-martial sitting in Berlin, Germany, the accused, Sharp, was acquitted under a charge of disrespect toward a superior officer, in violation of Article 89, Uniform Code of Military Justice, 50 USC § 683, but found guilty of the willful disobedience of a lawful order of a superior officer, in violation of Article 90, Uniform Code, 50 USC § 684, and of an assault whereby grievous bodily harm was intentionally inflicted, in violation of Article 128, Uniform Code, 50 USC § 722. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for six years. Although the period of confinement adjudged by the court-martial was reduced to four years, the remainder of the sentence, and both findings of guilty, were approved subsequently by the convening authority. An Army board of review has affirmed. We granted review to determine whether the law officer erred in refusing to furnish the court with certain instructions on lesser included offenses requested by defense counsel.

II

During the evening of June 12, 1954, the accused became involved in a noisy altercation at a local enlisted men's club. Thereupon, he was forcibly ejected from the facility's premises by a sergeant named Jansen. Although the accused had threatened to "get" him later, Jansen appeared to give the incident little thought, returned to his quarters, and promptly fell asleep. Shortly after midnight, the accused was seen in Jansen's room standing over the latter's bed muttering: "if you don't say you had enough, I'll beat your brains out." Sergeant Jansen, his face broken and clotted, was lying moaning on a bed which was literally flooded with blood. The victim's underclothing and the accused's shirt were also heavily bloodstained. The disturbance created in Jansen's room attracted the attention of a barracks neighbor, who immediately summoned the charge of quarters and the duty officer. This latter official, a Major Dudley, restricted the accused to his quarters, and directed that Jansen be hospitalized.

The following evening Major Dudley was approached by the accused, who—claiming to have been attacked by six unidentified persons—requested permission to report to the X-ray room. The Major, after refusing Sharp's request, ordered him to return to his barracks immediately. Sharp refused to do so, stating, "I will go to the guardhouse before I'll go back to my room," where-

upon—in accordance with his expressed preference—he was confined.

Testifying in his own behalf at the trial, the accused recalled with extraordinary clarity the two incidents involved. He described the difficulty at the club in detail, remembered Sergeant Jansen as the soldier who had ejected him, and recalled entering the Sergeant's room later the same evening. Although his account of the happenings in this room differed markedly from the version of the Government, the accused conceded that Jansen had bled freely from the mouth and otherwise. Moreover, his testimony with respect to the willful disobedience charge was substantially in accord with the narrative of the incident supplied by Major Dudley.

At the conclusion of the law officer's instructions, defense counsel requested charges on the elements of the lesser offenses of (1) failure to obey and (2) assault and battery. Declining, the law officer nevertheless proceeded to instruct the court on the issue of intoxication as affecting the ability to entertain knowledge or a specific intent.

### III

We are sure that no lesser offense under the willful disobedience charge was reasonably raised by the evidence. Nowhere does the record suggest that the accused had enjoyed access to alcohol in any form within the twenty-four hour period preceding the act of disobedience. In fact, he had been restricted to his barracks during this time, and presumably had remained there until the occurrence of the incident to which the Major was a party. His account of the facts leading up to the issuance of the order was complete, and meshed perfectly with the testimony of Major Dudley. By his own testimony at the trial, when ordered to return to his quarters or face confinement, he replied, "O.K., sir, throw me in the stockade." With the accused's testimony so closely approaching a judicial confession, it is apparent that the court-martial had no choice save an election between a finding of guilty of willful disobedience, on the one hand, and

an acquittal, on the other—the latter either on the theory of an illegal order or that of justifiable disobedience. The record reveals, however, that the legality of the order was uncontested. Indeed, it could not have been phrased more explicitly or have demanded more prompt compliance—and certainly the accused was physically able to comply therewith. See United States v. Vansant, 3 USCMA 30, 11 CMR 30; United States v. Heims, 3 USCMA 418, 12 CMR 174. It follows from what has been said that the findings of guilty of willful disobedience were not only warranted but inescapable.

### IV

We are also unable to find in issue a lesser offense under the specification charging the accused with an aggravated assault whereby grievous bodily harm was intentionally inflicted. Again, it is difficult to see how the issue of intoxication enters the picture at all. Admittedly, the accused had been drinking beer at some time during the evening of the assault, but it was not made to appear that his senses were in any measure dulled as a result of alcoholic intake. He recalled vividly entering the victim's room shortly after midnight, repeated in detail an alleged conversation he had held with Jansen after awakening him, and furnished a blow by blow account of a physical encounter claimed by him to have occurred thereafter. Although the accused's story is so bizarre as to be unworthy of belief, it nevertheless does support the clear inference that he was not intoxicated in any appreciable degree.

The circumstances surrounding the assault on Jansen are analogous to a situation described in the Manual. Manual for Courts-Martial, United States, 1951, paragraph 207b(2). There an illustrative account is furnished which relates to a victim held by one of several assailants while others beat him. Since Jansen testified that he does not recall any part of the occurrence, he was doubtless asleep, and therefore totally unable to defend himself—no more capable, indeed, than would have been the case had he been

forcibly subdued by several abettors to an attack. Moreover, the accused's admission from the stand that Jansen outweighed the former by some forty pounds is sufficient to convince that there was here no joint affray in which two antagonists exchange physical punishment. Exhibits attached to the record of trial include photographs of the victim, which picture a face mutilated almost beyond recognition. On the other hand, two photographs of the accused, taken shortly after the incident, reveal that he was quite unmarked. Moreover, the testimony of the neighbor who reported the barracks room incident to the authorities argues forcibly against the accused's story. He discerned no sounds of a scuffle, he stated —much less those indicating a mutual affray of the sort described by Sharp. Instead he heard only a series of dull thuds.

Had Jansen been in full possession of his physical faculties, it is not unlikely that he would have overwhelmed the accused—or, at least, that he would have prevented Sharp from beating him so severely. In fact, when asked on cross-examination how he could have produced such massive damage to Jansen, the accused admitted that the encounter must not have been a "fair fight." Accordingly, we reject the contention that the lesser offense of assault and battery was raised reasonably by the evidence. Certainly an accused is not entitled to an instruction embodying the theory of his case unless that theory is reasonably raised by the evidence.

It has been suggested that, as a matter of law, a mere assault with fists, although it results in bodily ■ harm to the victim, is in no case so aggravated as to justify a refusal to furnish to the triers of fact an instruction on assault and battery. This argument was found to be without merit in United States v. Dejewski, 3 USCMA 53, 11 CMR 53, where the accused and another viciously pummelled a helpless victim, who suffered a fractured jaw, multiple cuts, and a loss of teeth. We said there:

"Consequently, the evidence of the fracture being clear and unrebutted, 'grievous bodily harm' was established as a matter of law. It being equally clear that the accused's actions were intentional, and calculated to produce such a result, the evidence sufficiently established the existence of the specific intent essential to the offense charged, and no inference that a lesser offense was committed is possible." [United States v. Dejewski, supra, page 57.]

Since the victim in the present case suffered cerebral concussion, hemorrhage, and a fractured jaw as a result of the savage use of fists by the accused, it is apparent that our holding in the Dejewski case must control. Consequently, the fact that fists alone are used to inflict injury does not, as a matter of law, require the submission of a lesser degree of assault.

We are disposed to make an additional comment concerning the instruction with respect to intoxication. The record is almost wholly devoid of evidence tending to show that the consumption of alcohol caused an impairment of the accused's mental or physical faculties—as observed in an earlier portion of this opinion. Although we hesitate to criticize the practice of instructing on issues beneficial to an accused person not raised by the evidence, once more "We consider ourselves wholly unfettered by the law officer's commendable caution in treating intoxication as an issue in the case." United States v. Christensen, 4 USCMA 22, 15 CMR 22. It is true that we have held that an instruction on intoxication as affecting specific intent is incomplete without reference to lesser offenses not requiring such an intent. United States v. Simmons, 1 USCMA 691, 5 CMR 119. However, this principle can have no application where intoxication—although the subject of instruction—was not reasonably raised by the evidence.

V

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.