UNITED STATES, Appellee

v

JANOS M. FERENCZI, Private E-2,
U. S. Army, Appellant

10 USCMA 3, 27 CMR 77

4

No. 11,543

Decided October 31, 1958

*First Lieutenant Philip J. Miller* argued the cause for Appellant, Accused. With him on the brief were *Major Edward Fenig,* and *First Lieutenant Edwin E. Allen.*

*First Lieutenant Jay D. Fischer* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee, Major Thomas J. Nichols,* and *First Lieutenant Thomas M. Lofton.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was convicted by general court-martial of disrespect toward a superior officer, and willful disobedience of a lawful order of a superior officer, in violation of Articles 89 and 90, Uniform Code of Military Justice, 10 USC §§ 889 and 890, respectively.

The issues before the Court are:

1. Whether the evidence is sufficient to sustain the findings of guilty of Charge I and its specification, the disrespect offense, and

2. Whether the law officer should have instructed on the lesser included offense of failure to obey under Charge II, the willful disobedience offense.

Inasmuch as one of the issues presented concerns sufficiency of the evidence, it will be helpful to set forth the facts in some detail. On September 26, 1957, accused's unit, under the operational command of Lieutenant Hodges, had completed a period of instruction and began a ten-minute "break," five minutes of which was to be devoted to physical training and five to smoking. The former was apparently composed of squat-thrusts and push-ups. While the other members of the unit were exercising, it was noticed that the accused was not. The acting platoon sergeant ordered the accused to do push-ups but he did not obey. Lieutenant

Hodges noticed the accused was not exercising as directed by the acting platoon sergeant and consequently gave the accused at least four orders to do push-ups. The accused refused to obey the orders. Although at trial he testified his refusal to obey was due to his not feeling well, Lieutenant Hodges testified the accused had offered no explanation for his conduct. This incident formed the basis for the specification of Charge II, willful disobedience of a lawful order of a superior officer.

About an hour and a half later Lieutenant Hodges reported the incident to the company commander, Lieutenant Fallon, who, in turn, called the accused to his office. After considerable difficulty with the reporting procedure, the accused succeeded in reporting correctly. Lieutenant Fallon started to question the accused in an effort to familiarize himself with the circumstances surrounding the failure to engage in physical exercise. The accused is a Hungarian refugee who enlisted in the Army pursuant to the provisions of the "Lodge Act," Section 4, Act of June 30, 1950, 64 Stat 316, as amended. The accused's understanding of English is limited and Lieutenant Fallon found it necessary to summon an interpreter. In the confusion which accompanied the interview, the accused repeatedly attempted to interrupt Lieutenant Fallon and the interpreter, whereupon the

Lieutenant ordered the accused to "shut up." The accused clenched his fists, stepped toward the Lieutenant's desk and replied, "You no tell me to shut up." There is some evidence the Lieutenant retorted profanely he would tell accused to shut up and something to this effect, "Come on, it will be the last time you hit me." After glaring across the desk at each other for about forty-five seconds, the accused turned and hurriedly walked away without being dismissed. At the trial, accused testified the profanity was offensive to him and that he understood the Lieutenant's words as an invitation to fight.

We shall consider, first, whether the evidence of record is legally sufficient to sustain the findings of guilty of disrespect. The disrespectful behavior contemplated by Article 89 of the Code, supra, is such as detracts from the respect due to the authority and person of a superior officer. Such behavior may consist of either language or acts. The Manual for Courts-Martial, United States, 1951, in paragraph 168, suggests some examples where it states:

". . . Disrespect by acts may be exhibited in a variety of modes —as neglecting the customary salute, by a marked disdain, indifference, insolence, impertinence, undue familiarity, or other rudeness in the presence of the superior officer."

In the instant case the accused was convicted of behaving with disrespect toward his superior officer by contemptuously turning from and leaving the presence of the latter while said officer was talking to him. It is clear that such conduct, if established by the evidence, constitutes disrespect. In attacking the sufficiency of the evidence supporting the charge of disrespect, the accused does not deny he committed the physical act forming the basis of the charge nor does he suggest that he did not realize Lieutenant Fallon was his superior officer or that he thought the interview in question had been terminated. Essen-

tially, accused contends he left the presence of his superior officer out of fear rather than disrespect. Thus, at trial, he testified that he viewed Lieutenant Fallon's actions as constituting an invitation to fight, and since he did not want to strike his superior officer and was afraid of him, he attempted to leave the office.

The court-martial chose to believe the other witnesses rather than the accused and "if there is any substantial evidence in the record to support a conviction an appellate court, in the absence of other error, will not set aside the verdict." United States v McCrary, 1 USCMA 1, 1 CMR 1. Even where reasonable men may disagree as to the conclusions which may be drawn from certain evidence, this Court is without authority to interfere with the fact finders' determinations of fact. See *McCrary*, supra. Nor may we reweigh evidence or redetermine the credibility of witnesses. United States v Lowry, 4 USCMA 448, 16 CMR 22. In determining questions of fact, a court-martial may consider the personal interest which an accused in a criminal case has in its outcome (United States v Ferretti, 1 USCMA 323, 3 CMR 57) and may believe or reject his testimony in whole or in part (Manual for Courts-Martial, supra, paragraph 153a).

The accused testified that the company commander had invited him to engage in physical combat.  Although other witnesses indicated Lieutenant Fallon had raised his voice in admonishing the accused, none testified that the officer had issued an invitation to fight. Captain Lowe specifically stated he did not see Lieutenant Fallon threaten the accused or make any gestures toward him. Moreover, the testimony of several eyewitnesses to the incident clearly supports a finding that when·accused turned from and left the presence of his superior officer, he did so out of anger rather than fear. Thus Sergeant Hart testified that the accused did not appear to be frightened and Captain Lowe stated that the accused looked

6

as if "he was very mad" when he left his commander's office. Lieutenant Fallon's stipulated testimony indicates that the accused "stormed out" of the office. An examination of the accused's testimony reveals his admission that after Lieutenant Fallon had told him to shut up, he, the accused, was "getting mad." This testimony, coupled with accused's admission that he had lied at his previous trial and apparently would "continue to lie" until the Army fulfilled various expectations allegedly extant in his mind, justified the court's rejecting the accused's suggestion that he abruptly and discourteously left the presence of his superior officer out of fear.

We conclude there is sufficient evidence of record to support the findings of guilty of Charge I and its specification.

We come now to the second issue, viz, whether the law officer should have instructed on the lesser included offense of failure to obey under Charge II. This, of course, depends upon whether the lesser included offense of failure to obey was put in issue by the evidence produced at trial. United States v Davis, 2 USCMA 505, 10 CMR 3; United States v Hobbs, 7 USCMA 693, 23 CMR 157. Of course, where a lesser included offense is raised by the evidence as an alternative to the offense charged, the law officer must instruct on the elements of the lesser included offense, and the failure to do so is error as a matter of law. United States v, Clark, 1 USCMA 201, 2 CMR 107; United States v Rodgers, 8 USCMA 664, 25 CMR 168. Conversely stated, where no issue of the lesser included offense is presented by the evidence, no error is committed by a failure to instruct thereon. United States v Stout, 1 USCMA 639, 5 CMR 67; United States v Jackson, 4 USCMA 294, 15 CMR 294; United States v Sharp, 5 USCMA 580, 18 CMR 204.

Failure to obey as a lesser included offense of "willful disobedience" is not present under the facts in the instant case. Here, there is no contention the order was not understood, but the accused simply contended at trial that in warm weather he usually gets headaches and that he didn't feel well. Lieutenant Hodges testified, however, that at the time the order to do push-ups was given, the accused said nothing about feeling ill. Nor did accused go on sick call. Appellate defense counsel concede that the alleged physical incapacity did not raise the defense of impossibility of performance. However, they would have us find that if the accused in his own mind felt that to obey the order might make him ill, such subjective feeling, though falling short of an affirmative defense, could negate the willfulness required in disobedience of the lawful order of a superior officer under Article 90 of the Code. In this connection, appellate defense counsel would require willful "flaunting of authority" rather than "mere intentional non-compliance" for an Article 90 violation. We do not believe the meaning of "willfully" in Article 90 warrants such purported distinctions. "Defense also argues that the law officer in connection with Charge II should have defined the term 'willfully.' Except in the unusual case, however, we do not think such explanation called for or necessary. 'Willful' is a term in common use, with a generally accepted content of meaning, hardly requiring definition. . . . In the present evidential setting we are sure the term required no definition." United States v Soukup, 2 USCMA 141, 7 CMR 17. Therefore, in this case the law officer was not in error in failing to define the term without a request from defense counsel.

Counsel's argument appears to confuse intent with motive. So long as the disobedience of the order is willful, it matters not what motivated the disobedience unless the motivation establishes a defense. And willful disobedience of an order constitutes such behavior regardless of whether it is accompanied by an arrogant manner or is attended by the most respectful demeanor. United States v Soukup,

supra; United States v Trani, 1 USCMA 293, 3 CMR 27.

The order here was clearly willfully, i.e., intentionally disobeyed. "A neglect to comply with an order through heedlessness, remissness, or forgetfulness is an offense chargeable under Article 92." (Manual for Courts-Martial, supra, paragraph 169b.)

There was no evidence here of neglect, forgetfulness, or anything constituting a simple failure to obey. The order was understood, it required immediate compliance, and accused did not obey. There is nothing in the evidence to show that the disobedience was other than willful. Under such circumstances, no issue of failure to obey was present and no instructions thereon were required.

For the reasons stated, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

Judge LATIMER concurs in the result.