UNITED STATES, Appellee

v

SOLOMON L. MADISON, Captain, U. S. Air Force, Appellant

14 USCMA 655, 34 CMR 435

*George W. Latimer, Esquire,* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel E. Henderson, Jr.,* and *Lieutenant Colonel James W. Logan.*

*Lieutenant Colonel Robert M. Haynes* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

QUINN, Chief Judge:

A bullet from a revolver held by the accused pierced his wife's heart and ended her life and a seventeen-year-marriage. The accused was charged with premeditated murder, but convicted of homicide by culpable negligence, in violation of Article 119(b)(1), Uniform Code of Military Justice, 10 USC § 919. The court-martial sentenced him to dismissal, forfeiture of all pay and allowances, and confinement at hard labor for two years. On initial review, the findings of guilty and the sentence were approved, except that the confinement part of the sentence was eliminated. The case is before us, on the accused's petition for review, to consider the correctness of the law officer's refusal to instruct on the lesser offense of negligent homicide, and the effect of certain proceedings as to the sentence.

On the first question, the narrow point for decision is whether there is any foundation in the evidence to justify submission of the offense of negligent homicide to the court-martial for its consideration. United States v Kuefler, 14 USCMA 136, 139, 33 CMR 348; United States v Ferenczi, 10 USCMA 3, 27 CMR 77. We, therefore, put aside the substantial body of evidence which tended to show a greater degree of homicide, such as pretrial admissions by the accused indicating the shooting was deliberate and wilful,[1]

to scrutinize the record for evidence showing that Mrs. Madison's death resulted from simple negligent conduct by the accused. We found nothing. Even the accused's own evaluation of the evidence, which is most favorable to him, supports the law officer's ruling. At trial, he testified that sometime before the shooting, he extracted one cartridge so that if he "ran into a situation where . . . [he] would act impulsive, . . . the gun wouldn't accidently discharge." In his brief, he admits he knew the weapon was otherwise fully loaded; he also admits he was "unfamiliar with . . . [the gun's] characteristics," and when he removed the single cartridge he actually made the gun a "dangerous weapon ready to fire." His testimony at trial was that he pulled the gun from his pocket to "put it on Major Maronde with the intention of scaring him." The Major was standing at the divan in the accused's living room; and Mrs Madison was on the divan. The accused was "fairly close" to the Major. As he drew the weapon from his coat pocket, he pulled the hammer back into firing position. He handled the weapon in such a way that he "felt the hammer slipping." As he "was trying to hold on," the hammer "slipp[ed] . . . out from under . . . [his] thumb" while his "arm swung around," and the gun fired. The bullet struck his wife and entered her heart. Is there room

---

[1] At the hospital, to which Mrs. Madison was taken after the shooting, the accused was heard to explain, " '[w]hen she said that, that is when I shot her.' " In the first of several sworn statements to Office of Special Investigations agents, the accused maintained he did not know who shot his wife, but in the second statement he said he pulled the gun from his pocket "with the intentions of shooting [Major] MARONDE" who was standing next to his wife.

in this account of the shooting to conclude that Mrs. Madison's death resulted from simple carelessness or inattentiveness in the accused's handling of the gun, as distinguished from a culpable, wanton or reckless disregard for the foreseeable consequences? See United States v Sims, 7 USCMA 88, 21 CMR 214; United States v Roman, 1 USCMA 244, 2 CMR 150.

Nothing in his testimony, or any other part of the evidence, indicates the accused had any justification or excuse to point the gun at Major Maronde. Consequently, his testimony amounts to a judicial confession of at least an attempt to commit an assault upon the Major with a loaded weapon. See United States v Femmer, 14 USCMA 358, 34 CMR 138. A homicide resulting from the unintentional discharge of a gun used in attempting to commit an assault is involuntary manslaughter. Article 119 (b)(2), Uniform Code of Military Justice, 10 USC § 919; United States v Fox, 2 USCMA 465, 9 CMR 95; United States v Johnson, 3 USCMA 209, 11 CMR 209; cf. United States v Moreash, 1 USCMA 616, 5 CMR 44. Apart from the nature of the accused's act as an assault, and his admitted experience in firing a revolver for "proficiency," the evidence clearly indicates a wanton disregard of the foreseeable consequences of his actions. A person who knows and anticipates the danger of the "accidental" discharge of a loaded gun, but who nevertheless removes a cartridge from it, without ascertaining the effect on the discharge capabilities of the weapon, and who then, with the intention of pointing the gun at one of two persons near him, pulls the gun from his pocket in such manner as to lose control over the weapon and cause it to discharge, so that the bullet strikes one of the persons in front of him, is so palpably reckless, as to preclude description of his conduct as simple carelessness or inattentiveness. See United States v Judd, 10 USCMA 113, 27 CMR 187; United States v Cobb, 2 USCMA 339, 8 CMR 139. The law officer, therefore, was correct in refusing to instruct the court-martial on negligent homicide as a lesser offense reasonably in issue.

In an out-of-court hearing, the law officer submitted to counsel his proposed instructions on the sentence. Apparently, it was agreed that a work sheet listing eight types of sentence could be given to the court-martial to take into its closed session deliberations to assist it in putting the sentence into proper form.[2] However, defense counsel excepted to the following sentence form on the work sheet:

"To be dismissed from the service [and to be confined at hard labor for — (months) (years)] [and to forfeit all pay and allowances]." [Appellant Exhibit 14.]

Counsel contended the form could be read by the court members as a direction that they "must combine a sentence of dismissal with any period of confinement if confinement is adjudged." He asked that the work sheet list separately, dismissal and confinement. The request was denied. The law officer indicated that according to the Manual for Courts-Martial, United States, 1951, confinement could not be adjudged without dismissal. See Manual for Courts-Martial, supra, paragraph 126d. His

[2] The work sheet reads as follows (cf. United States v Genuario, 10 USCMA 260, 27 CMR 334):

"Captain Solomon L. Madison, it is my duty as president of this court to inform you that the court in closed session and upon secret written ballot, two-thirds of the members present at the time the vote was taken concurring, sentences you:

"To forfeit $ ——.

"To forfeit $ —— per month for —— months.

"To be admonished.

"To be reprimanded.

"To be restricted to the limits of —————— for —— months.

"To be suspended from command for —— months.

"To be suspended from rank for —— months.

"To be dismissed from the service [and to be confined at hard labor for —— (months) (years)] [and to forfeit all pay and allowances]." [Appellate Exhibit 14.]

remarks show he was wrong. It is, in fact, error to instruct a court-martial that it cannot impose confinement upon an officer without including dismissal in the sentence. United States v Smith, 10 USCMA 153, 27 CMR 227.

While the law officer's mistaken view was not communicated to the court members, two aspects of the proceedings suggest the possibility of error. First, although not ad- █ dressed directly to the instructions, defense counsel's request might be construed as sufficient notice to the law officer that he desired a separate instruction to the effect that confinement could be adjudged without dismissal. See United States v Mason, 8 USCMA 329, 24 CMR 139. Such an instruction would be appropriate. See United States v Turner, 14 USCMA 435, 34 CMR 215. Secondly, there is the question whether the work sheet can reasonably be construed as a mandatory direction that, if the court desired to impose a period of confinement upon the accused, it had to include dismissal in the sentence. In a persuasive argument, Government counsel answer both aspects by contending that the law officer's instructions clearly advised the court members they were free to adjudge any punishment they desired within the limits of the legal maximum; and that the work sheet was merely to reflect the sentence actually adjudged by the court; that is, it was to be used only after the court had deliberated and reached agreement on a sentence.[3] We need not explore the respective arguments to the point of decision. Even if we resolve both points in the accused's favor, we perceive no resulting prejudice.

In United States v Smith, 10 USCMA 153, 27 CMR 227, the accused, a First Lieutenant, was convicted of an unauthorized absence and larceny. The law officer instructed the court-martial that it must include dismissal in any sentence to confinement. We held the instruction was wrong, but we affirmed the sentence because the record of trial showed "there . . . [was no] reasonable possibility that the erroneous instruction caused the court to adjudge dismissal" as a mere accessory to confinement. Id., at page 154.

Here, the accused's entire sentence effort was directed to showing he was valuable to the Air Force as an officer who gave unstintingly of his time and energies to improve the efficiency and operation of the organizations to which he was assigned; that he had "untiring devotion to duty"; and that he had been recommended for promotion to the rank of Major. His counsel summed up the defense effort in these simple words: "Capt Madison, in speaking from the bottom of his heart, would love to remain in the Air Force." Trial counsel asked for the maximum penalty because of the "aggravated" circumstances of the case. The major sentence issue submitted to the court-martial, therefore, was whether the accused should be allowed to remain in the service or be dismissed. Confinement was incidental to dismissal, not the reverse. On the rec- █ ord, it makes little sense to say the court may have adjudged dismissal merely because it

---

[3] In pertinent part, the law officer instructed the court-martial as follows:

"Based upon your findings in this case, you are advised that the maximum punishment is dismissal from the service, forfeiture of all pay and allowances, confinement at hard labor for three years. Thus you are authorized to impose any punishment not prohibited by the Code which does not exceed dismissal from the service, forfeiture of all pay and allowances, and confinement at hard labor for three years.

• • • • •

" . . . On this . . . [work sheet] are more or less samples of certain sentences. It does not include a list of all the sentences that may be imposed, but merely has a number of the more usual sentences imposed.

"Extreme care should be exercised in using this worksheet and in selecting the sentence form which properly reflects the sentence of the court. The president may read from the worksheet in announcing the sentence in open court."

wanted to sentence the accused to two years' confinement. Patently, the court knew, and fully understood, that, if it was to adjudge dismissal, it had to do so by an affirmative and deliberate vote for that penalty. We are satisfied the court members were not led to include dismissal in the sentence as mere ancillary punishment to a period of confinement. United States v Smith, supra; United States v Genuario, 10 USCMA 260, 27 CMR 334; United States v Jobe, 10 USCMA 276, 27 CMR 350.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.