UNITED STATES

v.

Captain Russell T. JONES, 465–90–7658 FR, United States Air Force.

ACM 22771.

U. S. Air Force Court of Military Review.

Sentence Adjudged 5 March 1980.

Decided 18 March 1981.

Appellate Counsel for the Accused: Mr. Luther C. West, Baltimore, Maryland. Colonel Larry G. Stephens, Colonel George R. Stevens and Captain Willard K. Lockwood.

Appellate Counsel for the United States: Colonel James P. Porter and Lieutenant Colonel Bruce R. Houston.

Before EARLY, KASTL and MILLER, Appellate Military Judges.

## DECISION

KASTL, Judge:

We have examined the record of trial, the assignment of errors, and the Government's reply thereto. We have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the accused was committed.

In the Specification of Charge I, the accused is charged with attempted premeditated murder of his wife by electrocuting her in a bathtub, in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880. In both the written brief and oral argument, his counsel assert that the military judge committed prejudicial error by refusing to instruct the court members on the lesser included offense of assault and battery by electricity. We disagree.

I

The accused's wife was the main prosecution witness. Her testimony is essentially as follows: The accused woke her early one morning in December 1979 and advised her of an early Christmas present. He blindfolded her, helped her into the bathroom, and placed her in a tub containing about four inches of warm water.[1] The accused cautioned her not to touch the sides or lean back. After sitting there for about 15 seconds she felt something long and thin brush against her back and right side. When she began to feel a steady electrical current, primarily in her legs, she screamed. She may have blacked out and so could not recall how she got out of the tub. She did not notice any electric cords, wires, or appliances when she left the tub. The accused then looked at her and said, "I'm sorry. I'm sorry. I'm afraid. I'm afraid. I just can't live with you any more and I don't want to lose [our son]." She then grabbed a robe and departed the house, screaming. She ran first to a neighbor's house, but no one answered. She then ran to the base main gate, where she told the security policeman on duty that her husband had tried to electrocute her.

Other prosecution evidence indicated that the clocks were set ahead two hours in the house; that approximately four inches of warm water was in the bathtub when investigators arrived at the house soon after the wife's complaint; and that her shoulder-length hair was observed by investigators to be wet around the ends. A friend of the accused's wife testified that the wife told her about the first bathtub incident soon after it occurred. Another witness confirmed that he heard screams early on the morning in question. Finally, the foreman of the base electrical shop testified that the wiring to the bathroom apparently had been tampered with.[2]

The accused did not take the stand. The defense emphasized the following facts: (1) no "murder weapon" was ever found, despite an extensive search; (2) no marks appeared on the victim's body to substantiate an electric shock; (3) because of the accused's possible romantic liaison elsewhere, his spouse had a genuine motive to unjustly accuse him; (4) her testimony at trial contradicted an earlier statement to investigators as to whether the electric current she felt had been steady or alternating; (5) she did not go to the base hospital until late the same afternoon; (6) earlier she had watched a "Mrs. Columbo" television show with the accused which suggested a method for electrocution in a bathtub; and (7) she was a schemer, liar, and marijuana smoker.

II

A military judge must instruct the court on the elements of all lesser offenses

---

1. This was not the first time such an incident had occurred. According to the accused's wife, similar activity had taken place the previous month, but the accused had stopped when his wife took notice of his specific conduct.

2. Normally, electric current to the bathroom would be controlled by a sensitive device which would quickly break the circuit. Evidence suggested someone had changed the wiring of the device. It was unclear whether or not this had occurred in a recent base housing remodernization or at another time.

included in the offense charged when there is evidence from which the fact-finders could reasonably infer the accused's guilt of a lesser crime. *United States v. Staten*, 6 M.J. 275 (C.M.A.1979); *United States v. Moore*, 16 U.S.C.M.A. 375, 36 C.M.R. 531, 532–533 (1966); *United States v. Banks*, 7 M.J. 501 (A.F.C.M.R.1979). Even where the military judge determines that no lesser included offense was raised by the evidence, we have an independent responsibility to determine whether the accused was denied his right to have the triers of fact consider all reasonable alternatives of guilt. *United States v. McGee*, 1 M.J. 193, 194 (C.M.A. 1975); *United States v. Clark*, 22 U.S.C. M.A. 576, 48 C.M.R. 83, 84 (1973); *United States v. Banks, supra*. The applicable test for our evaluation is this: Does the record contain some evidence of a lesser offense to which the court-martial might attach credit? *United States v. Evans*, 17 U.S.C.M.A. 238, 38 C.M.R. 36, 49 (1967); *United States v. Banks, supra; United States v. Hunt*, 5 M.J. 804, 806 (A.F.C.M.R.1978). Conversely, where no issue of a lesser offense is presented by the evidence, no error is committed by failure to instruct thereon. *United States v. Ferenczi*, 10 U.S.C.M.A. 3, 27 C.M.R. 77, 81 (1958); *United States v. Sharp*, 5 U.S.C.M.A. 580, 18 C.M.R. 204, 206 (1955); *United States v. Riska*, 33 C.M.R.

939, 942 (A.F.B.R.1963). Any doubt concerning whether the evidence is sufficient to require an instruction should be resolved in favor of the accused. *United States v. Clark, supra; United States v. Bairos*, 18 U.S.C.M.A. 15, 39 C.M.R. 15, 17 (1968).

### III

■ Applying these standards, we have carefully examined the record. Nowhere is there evidence to support a reasonable inference that the accused intended merely to frighten his wife or administer a non-lethal shock. To the contrary, the case presents an "all or nothing" situation—either she was lying, or the accused truly intended to kill her.

We do not find the applicable case law suggesting that remote or far-fetched speculation triggers the need for an instruction on a lesser included offense. To the contrary, there must be some evidence in the record "to which the members may attach credit." *United States v. Evans, supra. See also United States v. Banks, supra*, and *United States v. Kuefler*, 14 U.S.C.M.A. 136, 33 C.M.R. 348, 351 (1963). Here, absolutely no such evidence is to be found.[3] Since we are convinced that the lesser included offense of assault was nowhere

3. Defense efforts at trial appear exclusively directed to the theory that the accused was completely innocent. The single suggestion that a lesser included offense of assault and battery existed appears during a 39a session on proposed instructions:

MJ: The defense in the case appears, from the evidence that has come out, to be one of defending on the theory that there was no assault, period. Is that correct?
DC: Yes, Your Honor.
MJ: In other words, *a total defense, that no assault whatsoever occurred*?
DC: *That is correct, Your Honor*. However, we do feel that the court could interpret from the evidence something else.
MJ: Would you elaborate on that, where the evidence might support these lesser included that you refer to?
DC: Well, Your Honor, we feel that just on the basis of the evidence that has been developed, that the court could fail to find any one of the elements that are involved with attempted murder, including intent, premeditation, any number of things. They could be-

lieve part of the alleged victim's testimony, all of it, or none of it. Certainly, *it is the defense's basic position that nothing ever occurred.* However, it is also our understanding that it is the responsibility of the military judge to instruct on all offenses which might possibly have been raised by— you know, could fairly be said to have been raised by the evidence in the case.
MJ: And I'm wondering what evidence it is that you're alluding to that raises these lesser offenses.
DC: Well, for example, Your Honor, we feel that it's conceivable that the jury could, by believing a substantial portion of the alleged victim's testimony, believe that some sort of assault involving electricity could have occurred, without necessarily concluding that there was either premeditation involved or an intent to kill, for that matter.
MJ: Does any evidence suggest that there was some lesser intent?
DC: Oh, Your Honor, we don't think that it's, uh—we think that the burden of proof goes

raised, it follows that no error was committed by the military judge in failing to instruct thereon. *United States v. Ferenczi, supra; United States v. Sharp, supra. See also United States v. Clark,* 1 U.S.C.M.A. 201, 2 C.M.R. 107, 111 (1952).

The findings of guilty and the sentence are

AFFIRMED.

EARLY, Chief Judge, and MILLER, Judge, concur.

the other way, and that they have to find a specific matter beyond a reasonable doubt.

MJ: I'm not suggesting there is a shifting of burden of proof. I'm *asking if there is any evidence that would support that lesser offense.*

DC: *Well, Your Honor, simply the fact that no apparent serious physical harm was suffered by the victim.*

MJ: Did the prosecution have anything?

TC: With regard to that issue, Your Honor?

MJ: Yes.

TC: Well, Your Honor, we've carefully considered all the evidence in this case, and we simply see nowhere that anything was reasonably raised to indicate that there was any other intent other than an intent to kill. [Emphasis added.]