UNITED STATES, Appellee

v.

RAYMOND C. MAJIA, Private First Class, U. S. Army, Appellant

2 USCMA 616, 10 CMR 114

No. 1289

Decided June 12, 1953

LT COL Edgar R. Minnich, U. S. Army, LT COL Stewart H. Legendre, U. S. Army, and 1ST LT Levin H. Campbell, III, U. S. Army, for Appellant.

LT COL Thayer Chapman, U. S. Army, and 1ST LT Robert A. Forman, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Accused was tried by general court-martial upon charges of willful disobedience of an order of a superior officer, failure to obey an order of a noncommissioned officer, and misbehavior before the enemy, violations of Articles 90, 92, and 99 of the Uniform Code of Military Justice, 50 USC §§ 684, 686, and 693. The court-martial acquitted him of the latter two charges, but found him guilty of willful disobedience of a superior officer. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for eight years. The convening authority reduced the period of confinement to five years, but otherwise approved. The board of review affirmed the findings and sentence as modified. We granted the accused's petition for review, prior to our decision in United States v. Charles F. Simmons (No. 505), 5 CMR 119, decided September 26, 1952, in order that we might determine the following issues: (1) Whether the instructions of the law officer were sufficient, and (2) Whether the evidence is sufficient to sustain the verdict. We shall discuss these questions in the reverse order from that stated.

The record discloses that on October 22, 1951, the accused was a member of one of the rifle platoons of Company K, Fifth Cavalry Regiment, First Cavalry Division, located at that time in the area of Chogum-ni, Korea. Lieutenant Hixon was executive officer of the company and had been for an undisclosed period of time before the particular incident with which we are confronted. On that day, and for several days thereafter, Company K was in

**617**

contact with the enemy. On October 22, the first sergeant of the company saw the accused in the kitchen area which was located some three miles in rear of the forward elements. The sergeant had previously been told by the company commander to direct every man to proceed to the forward area because the company had suffered numerous casualties, and pursuant to this direction the sergeant called the accused into the orderly room to ascertain why he was back in that area instead of in the forward area with his platoon. The accused replied that he had come down off the hill because he could not take it any longer. The sergeant asked accused if he had been to the medical unit for treatment or if medical personnel had brought him to the rear. Accused merely replied that he just could not take it. The sergeant ordered accused to report to his unit on the hill. Accused refused and the sergeant then restricted him to the kitchen area.

On October 26, four days later, the company was still in contact with the enemy. On that date Lieutenant Hixon noticed accused in the kitchen area, and after carefully explaining the situation to him and after notifying him that his presence there might help save someone's life, directed him to return to his platoon. Accused failed to acknowledge the direction and gave no evidence of complying. Lieutenant Hixon then followed this direction by giving him a direct order to go forward and join his unit. While the Lieutenant could not repeat the exact words in which the accused phrased his reply, the clear import of the testimony was that the accused stated he would not. After giving the accused a few minutes to reconsider his refusal and after observing that he was acting in a manner which disclosed he was not going to obey the order, the Lieutenant told him to go to his tent and stay there. This order the accused obeyed without objection.

We believe the evidence set out above is sufficient to support the finding of guilt. The evidence offered ■■■■■■ ■ by the prosecution was undisputed and it established clearly that the accused received an order from his superior officer, Lieu-

**618**

tenant Hixon; that he knew of and understood the order; and that he willfully refused to obey it. The only suggestion of insufficiency is levelled at the element of knowledge. But contrary to accused's contention, and assuming the burden is not on accused to show lack of knowledge, the record amply supports a finding that he knew the officer who issued the order. First, we should make it crystal clear that the accused never contended until on appeal that the record was deficient in this regard, and even now he does not contend there is any evidence that he did not know. He relies solely on the weakness in the Government's proof, but in this he fails. The accused had been a member of the particular company for over five months. The officer had been with the company for some time and the period can be fixed with certainty at three weeks. The conversation took place during daylight hours in a kitchen area and there is no evidence that the officer was not wearing his insignia of rank. The accused had been present with the company and in the area where he would be thrown into contact with the officers. He had refused to obey the orders of a sergeant and prior to the time the Lieutenant issued his order, he informed the accused of the seriousness of the offense and the punishment that could be imposed. He could hardly have done that without informing him that he was disobeying the orders of an officer. When the officer ordered him to his quarters he immediately complied. From these facts any reasonable person could find that the accused was well aware of the fact that an officer whom he knew to be the executive officer of his unit issued the order. Accordingly, the contention that the evidence is insufficient is overruled.

At the conclusion of the presentation of the evidence, the law officer, in instructing the court-martial members on the elements of the offense of willful disobedience, stated as follows:

". . . (1) that the accused received a certain command from a certain officer here alleged; (2) that such officer was the superior officer of

the accused; and (3) that the accused willfully disobeyed the command."

The above instruction in prescribing the elements of this offense meets the requirements set out in the ■ Manual for Courts-Martial, United States, 1951. However, we have previously considered the completeness of such an instruction and have held that where the evidence raises an issue as to whether the accused had knowledge that the order he received was given by a superior officer, that factor must be included within the instruction. Thus, in United States v. Charles F. Simmons, supra, we stated:

". . . Under the facts of this case, there was an issue of knowledge because the evidence for the Government showed accused to be intoxicated; his own testimony indicated that he was so under the influence of liquor he 'blacked out' and had no recollection of the events. . . . Testimony of an accused is sufficient to make an issue and in this case there is evidence from which the court could have reasonably found that the petitioner was not cognizant of the fact that the order was issued by an officer."

In the Simmons case the evidence was in dispute as to whether the accused knew, or reasonably should have known, that the person issuing the order was a superior officer. In a subsequent case, United States v. Wallace (No. 988), 10 CMR 93, decided June 3, 1953, we were presented with a case where there was no issue raised. There we held that, without a request, there was no necessity for the law officer to add to the instruction set out in the Manual. In that case we stated:

"We reiterate again that in this particular crime, it is unimportant whether we designate knowledge an element of the offense or fact to be proven as an affirmative defense because, if in issue, the court must be told to consider it in arriving at a finding. However, because it falls so close to the border we will not reverse for failure on the part of the law officer to include it as an element of the offense if it is not reasonably raised as a factual issue. If knowledge is conceded, if the evidence compels a finding that the accused knew the order was given by an officer, or if the record is barren of any evidence from which it could reasonably be inferred the accused might not know that a superior officer was issuing the order, then the error, if any, is nonprejudicial. If, on the other hand, the evidence permits a finding of lack of knowledge, then the accused has just cause to complain. . . . ."

This latter rule governs this case. The record is barren of evidence from which it could reasonably be inferred that the accused did not know the officer. The facts set out in the first part of this opinion are more than adequate to show that when interpreted in a light most favorable to the accused, there is no issue of knowledge.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring in the result):

I concur in the result reached by my brothers. I would concur outright but for my views on the question of whether "knowledge" of the superior officer source of the command is an element of the offense of willful disobedience alleged here. For a full expression of these, see my separate opinion in United States v. Wallace (No. 988), 10 CMR 98, decided June 3, 1953.