UNITED STATES, Appellee

v.

LAWRENCE ST. PIERRE, Seaman, U. S. Navy, Appellant

3 USCMA 33, 11 CMR 33

No. 1808

Decided July 3, 1953

CDR John T. Davies, USN, for Appellant.
CDR E. L. McDonald, USN, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was convicted by a general court-martial of offering violence to a superior officer in violation of Article 90 of the Uniform Code of Military Justice, 50 USC § 684, and assault upon a superior petty officer in violation of Article 91, of the Code, supra, 50 USC § 685. He was sentenced to a bad-conduct discharge, reduction to the lowest grade, confinement at hard labor for one year, and a partial forfeiture of pay. Intermediate appellate agencies have affirmed the findings and sentence. We granted the accused's petition for review to determine the validity of the law officer's instructions.

The evidence presented by the prosecution clearly established the commission of the offenses charged, and, standing alone, left no doubt that the accused knew the individuals assaulted were his superiors. The accused did not contend that the assaults were not committed. His sole contention was that because of intoxication he simply had no recollection of the events transpiring during the relatively brief period described in the specifications. An appreciation of the validity of the factual issue thus presented, and the accused's assignment of error based upon it, requires a review of the pertinent evidence.

On the night of the incident giving rise to the charges, the accused was observed leaving an enlisted men's club with a can of beer partially concealed on his person. Since this was contrary to station regulations, the junior officer of the day, Chief Yeoman Hall, ordered him to stop. He reluctantly complied, hurling the can to the ground with an epithet. When Hall ordered the accused to accompany him, he replied, "Chief, I'm already restricted." With a tirade of profane invective, he twisted away from the petty officer and fled from the scene. Learning the accused's identity from a bystander, Hall proceeded to the accused's barracks where he placed him under arrest and returned him to the office of the Officer of the Day, Lieutenant Burns. There, during the course of interrogation by Lieutenant Burns, the accused turned from the officer, seized the Chief Yeoman by the shirtfront, and directed a punch at his head. Hall evaded the blow. During

**35**

the struggle, Lieutenant Burns tried to calm the accused, who then turned his attention to the officer, and sought to strike him with his fist. This blow was partially blocked, and the accused was removed to the brig. Testifying in his own behalf, the accused asserted that he had consumed a large quantity of beer during a period of about ten hours prior to the incident, and while he recalled with clarity the events of the evening, he averred that he had no recollection of what occurred after his arrival at the entrance to the office of the Officer of the Day. The return of his memory coincided with the conclusion of the affray and his arrival at the brig. A medical officer, who examined the accused shortly after he was confined, testified in rebuttal, that he had subjected him to various sobriety tests and concluded he was not under the influence of intoxicants to such an extent as to appreciably impair the rational and full exercise of his mental and physical faculties. When questioned by the medical officer about drinking, the accused not only protested his complete sobriety, but denied even a prior indulgence in intoxicants.

At the conclusion of the presentation of evidence, the law officer outlined the essential elements of the offenses charged in conformity with paragraphs 169a and 170b, Manual for Courts-Martial, United States, 1951. Relative to the evidence of drunkenness, the law officer stated:

". . . . Concerning drunkenness, the court is advised that and I am reading from page 294, 'A temporary loss of reason which accompanies and is part of a drunken spree and which is not the result of delirium tremens or some other mental defect, disease, or derangement is not insanity in the legal sense. It is a general rule of law that voluntary drunkenness not amounting to legal insanity, whether caused by liquor or drugs, is not an excuse for crime committed while in that condition; but such drunkenness may be considered as affecting mental capacity to entertain a specific intent.' Relative to the question of specific intent, you could read in there. In other words, *if the accused did not*

*know that the officer was his superior that might be a defense and drunkenness might go to that question.* However, the court is cautioned that voluntary drunkenness not amounting to legal insanity is not an excuse for the crime committed. . . . ." [Emphasis supplied].

He then declared that simple assault was a lesser included offense of each principal offense charged, and outlined the essential elements thereof.

The accused's assignment of error, upon which the single issue in this case is framed, attacks the use of the word "might" in the italicized portion of the law officer's instructions. Negatively approached, the defense position is, not that the law officer failed to instruct on the subject of knowledge, but he contends that intoxication excludes criminal responsibility for offenses requiring special knowledge, and the use of the word "might," a word denoting mere possibility, is erroneous and misleading. Although this contention necessarily admits that the question of knowledge was presented to the court, we cannot proceed to determine the sufficiency of the instructions, nor to evaluate the prejudicial effect of any error contained therein, without first deciding whether a factual issue was reasonably raised by the evidence.

In reference to the offense of assault upon a superior officer, paragraph 169, Manual for Courts-Martial, United States, 1951, provides:

". . . . That the accused did not know the officer to be his superior is available as a defense."

In United States v. Charles F. Simmons (No. 505), 1 USCMA 691, 5 CMR 119, decided September 26, 1952, we considered similar provisions found in paragraphs 168 and 170 of the Manual, relating to the offenses of disrespect toward a superior officer, and insubordinate conduct toward a noncommissioned officer respectively. We said in that case:

"We are uncertain as to the true sense in which the framers of the Manual used the word 'defense.' They may have intended to cast the burden

on accused to justify or excuse his refusal or they may have intended to merely restate the proposition that failure of the Government to prove that element is a defense available to the accused. . . ."

We are confronted in this case with the same difficulty of determining whether knowledge is an essential element, or, the lack thereof, an affirmative defense. That difficulty is of little importance, however, for we have firmly declared our position that whenever the evidence reasonably raises the factual issue of knowledge, the instructions must require a consideration of that question by the court in the course of its deliberations. From the standpoint of prejudice to the accused, therefore, any error resulting from a failure to instruct on the subject of knowledge, requires reversal, only if the evidence is sufficient to raise it as a factual issue. United States v. Charles F. Simmons, supra; United States v. Wallace (No. 988), 2 USCMA 595, 10 CMR 93, decided June 3, 1953; United States v. Majia (No. 1289), 2 USCMA 616, 10 CMR 114, decided June 12, 1953. Nothing in the instant case requires a more definitive resolution of the problem of special knowledge created by the Manual's ambiguous provisions.

We conclude from our examination of the record of trial that the evidence compels a finding that the accused knew that the persons assaulted were a superior officer and a superior petty officer, respectively. In the face of the overwhelming evidence of sobriety presented by the prosecution witnesses; the failure of the single defense witness to describe the accused's condition as even approximating drunkenness; the accused's denial of prior indulgence immediately after the assaults complained of; and finally, in the face of the accused's recitation of every detail of his activities for several hours prior to his arrival at the office of the Officer of the Day; the accused's assertion of "ambulatory stupefaction" (which strangely enough, conveniently lasted for exactly the same time required for the consummation of the offenses), is wholly incredible and must be rejected by reasonable men. It necessarily follows that had the law officer wholly failed to instruct upon the subject of knowledge any error resulting therefrom would be nonprejudicial. See United States v. Wallace, supra. However, the subject was in fact presented to the court for its consideration. Consequently, if the instructions were erroneous and misleading, as contended, the error, if any, was of form only, and did not materially prejudice the substantial rights of the accused. Horning v. District of Columbia, 254 US 135, 65 L ed 185, 41 S Ct 53.

Mere intoxication, regardless of degree, does not negative criminal responsibility in offenses involving relationship of subordinate to superior. As in offenses requiring a specific intent, to constitute a defense, intoxication must be of such a degree as to either destroy or seriously impair the ability of the accused to understand the existence of the above relationship. United States v. Backley (No. 1588), 2 USCMA 496, 9 CMR 126, decided May 12, 1953; United States v. Craig, 2 USCMA 650, 10 CMR 148, decided June 24, 1953. In this sense then, intoxication is only potentially capable of raising knowledge of the relationship as a factual issue. Whether such intoxication is sufficient to preclude a conviction depends upon the degree thereof. Consequently the law officer's instruction that "drunkenness might go to that question," does no more or no less than express that possibility. The remaining portions of the italicized sentence consistently followed that central theme.

The Board of Review held that the final sentence of the instructions, as quoted above, was a transition between the discussion of the principal offenses charged and the lesser included offenses of assault, and merely declaratory of the fact that intoxication was not a defense to the lesser offenses. Viewing the instructions as a whole, as we are required to do, this conclusion was entirely reasonable. If they were in any way misleading, the burden of requesting clarification or elaboration rested upon the defense counsel at the trial. In

the absence of such a request the accused is in no position to complain of the instructions given. United States v. Fenton (No. 1639), 2 USCMA 630, 10 CMR 128, decided June 12, 1953.

The decision of the Board of Review is affirmed.

Judge LATIMER concurs.

BROSMAN, Judge (concurring in the result):

I concur in the result reached by my brothers in this case. I reach this conclusion through the following steps: (1) In my view, "knowledge" in cases of the sort before us now is not an element of the offense alleged, but its absence constitutes an affirmative defense available to the accused. (2) Therefore, if want of knowledge of the character with which we are presently concerned is reasonably raised by the evidence, an instruction as to legal effect is required sua sponte. (3) Intoxication may negate the existence of knowledge of this nature. (4) The evidence of intoxication here placed the matter in issue and required an instruction. (5) That given by the law officer met minimal standards. For a full expression of my views on this subject, see my separate opinion in United States v. Wallace (No. 988), 2 USCMA 595, 10 CMR 93, decided June 3, 1953.