UNITED STATES, Appellee

v.

JOSEPH C. DYKES, Private First Class,
U. S. Marine Corps, Appellant

5 USCMA 735, 19 CMR 31

No. 4940

Decided May 6, 1955

LCDR Benjamin H. Berry, USN, for Appellant.

Cdr Raymond W. Glasgow, USN, and LCdr M. M. Seydel, USN, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

This case raises a problem in the military law of confessions. Following the accused's trial by a general court-martial, he was convicted under three specifications of larceny—in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715. He was sentenced to receive a bad-conduct discharge, and as well to total forfeitures, confinement at hard labor for two years, and reduction to grade of private. This was reduced by the convening authority so as to include only one year's confinement, but was otherwise approved. Thereafter it was affirmed, as modified, by a board of review in the office of The Judge Advocate General, United States Navy. The accused's petition for review was granted by this Court to permit consideration of the possibility of prejudicial error in the law officer's instructions concerning the voluntary nature of the accused's confession. Of necessity, the facts must be set out in some detail.

## II

Sometime during the night of January 24-25, 1954, a series of larcenies was committed within the accused's platoon area at Parris Island, South Carolina. When the losses were discovered the following morning, an investigator from the Guard Company at Parris Island was called, and a general search of the area undertaken. The accused volunteered to join the searching party and his offer was accepted. During the course of this effort, the accused "found" all of the missing money, and one of the missing billfolds, in certain underbrush. For the reason that he had been alone when he recovered the money, and because he had been assigned to a fire watch within the unit area during the preceding evening, it was suspected that he might have been the source of the loss of the property as well as of its return. Acting on this suspicion, one Collins, the Guard Company investigator, escorted the accused to the former's office for further interrogation. Thereafter, the accused executed a written confession in which he admitted the larcenies in question. He related that he had realized his mistake during the morning after the offense, and had brought about the return of the stolen property in the manner described.

The Government presented substantial evidence of voluntariness, and this collateral question was vigorously contested by the accused. We need say no more than that this issue was fairly raised at the trial. After the presentation of evidence bearing on the matter, the law officer admitted Dykes' confession. The prosecution rested, and thereafter no evidence was forthcoming from the defense. Following closing arguments, the law officer undertook to advise the members of the court-martial on the law of the case, and—by way of parting shot—informed them that:

"Now I admitted an incriminating statement of the accused over objection of the defense and it is true that my admitting is final insofar as admission is concerned. The weight to be given and the credibility is, as in any other evidence, for you, the court, to determine."

No objection was voiced by defense counsel, either to what was said, or to that which was left unspoken. It is now urged that this instruction relating to the confession was deficient in that it did not make clear to the court that, if its members found the confession to have been an involuntary one, then they must disregard it. Although on previous occasions we have touched on this privilege of the fact-finders, we have had no occasion to examine in detail the underlying principles on which it is based.

## III

It has been suggested that despite the most flagrant error in the law officer's advice to the members of the court concerning the admission of the confession, reversal is not demanded. This sug-

gestion proceeds from the premise that —in the absence of a defense request— no obligation rests on a law officer to instruct the members of a court-martial that, in reaching their own conclusion, they must redetermine the voluntariness of any confession received in evidence. Cf. United States v. Davis, 2 USCMA 505, 10 CMR 3. See also Jackson v. United States, 198 F2d 497 (CA DC Cir), cert den 344 US 858, 97 L ed 666, 73 S Ct 96; McAffee v. United States, 105 F2d 21, 27 (CA DC Cir). This view is not at all firmly established for the present purpose by the Davis case. There we commented that "there was no real issue as to voluntariness save in defense counsel's mind, and manifested by him in cross-examination questions directed to prosecution witnesses." Cf. United States v. Smith, 3 USCMA 680, 14 CMR 98. Here the issue of voluntariness was indisputably raised.

More important—and although the premise's correctness be granted—the conclusion does not follow. We find a perfect analogy in a situation involving defense evidence of the accused's good character. As we stated in United States v. Johnson, 3 USCMA 709, 14 CMR 127:

". . . No obligation whatever reposed on the law officer to instruct on the effect of character evidence, in the absence of a request from defense counsel at the trial level. United States v. Schumacher, 2 USCMA 134, 7 CMR 10. *At the same time—and even without objection by defense— the law officer was certainly not free gratuitously to destroy all effect of character evidence in resolving the issue of guilt or innocence.*" [Emphasis supplied.]

With reference to the Johnson case, where the conviction was reversed by a unanimous Court, it is worthy of mention that—as in the instant case—defense counsel appears to have made no objection at the trial level to the instruction complained of on appeal.

## IV

Accordingly, it becomes necessary to

grapple with the underlying principles which determine in military law the function of the court when attack is made on the voluntariness of a confession admitted in evidence by the law officer. Only then will we be able to decide whether the instruction supplied in the present case merely constituted a less than lucid exposition of its proper task to the court, or instead involved an improper contraction of that function.

Two principal reasons are to be discerned for the exclusion of testimony or other evidence. One is the belief that it is so untrustworthy as to be valueless to the triers of fact—and may even mislead them. A typical example of this ground for exclusion is to be observed in the qualified ban on hearsay evidence. The second reason is found in the presence of some positive policy of the law which intervenes to prevent the reception of offered evidence. Typical in this area are privileged matters— such as the testimony of an attorney concerning his client's communications, which of course may not be introduced over the client's objection.

In United States v. Josey, 3 USCMA 767, 14 CMR 185, we suggested that the traditional rationale for the exclusion of involuntary extrajudicial confessions or admissions is the likelihood that they are untrustworthy. However, we also noted that an additional policy had come to be invoked to require the rejection of such evidence—that is, a protection of the privilege against self-incrimination. Consequently, it is now generally considered improper to admit in evidence an involuntary extrajudicial statement, despite the fact that its trustworthiness probability may be high. An example of a situation in which an involuntary confession may nonetheless have demonstrated its trustworthiness is to be found in an inculpatory pretrial statement by an accused which has been corroborated in detail by extrinsic testimony. In the Josey case, supra, we noted, too, that a variety of subsidiary rules-of-thumb have been applied to exclude extrajudicial confessions. Illustrative here is the rule of the Federal courts which prevents the reception of a statement made by a

738

confined person who has not been brought promptly before a United States Commissioner for preliminary hearing. McNabb v. United States, 318 US 332, 87 L ed 819, 63 S Ct 608. The presumable purpose of this principle is to foster *both* policies reflected in the prohibition against involuntary statements.

Military law has tended to focus on the untrustworthiness aspect of involuntary confessions—that is to say, on whether in a particular case there existed coercion, undue influence, or improper inducement of a sort likely to lead an innocent man to imperil himself by confessing to a crime he did not commit. See, e. g., United States v. Monge, 1 USCMA 95, 2 CMR 1; United States v. Colbert, 2 USCMA 3, 6 CMR 3. However, attention has also been given in the law of the military establishment to a protection of the privilege against self-incrimination. The warning requirements of Article 31(b) further this objective, as well as that of precluding the admission of statements which, by reason of the possibility of involuntariness, are untrustworthy. Indeed, the extrajudicial statements involved in United States v. Wilson, 2 USCMA 248, 8 CMR 48, were doubtless sufficiently voluntary to have been wholly trustworthy. Nonetheless, the warning requirement—which in that instance furthered only the policy against self-incrimination—intervened, and the evidence was held to be inadmissible.

Peculiarly difficult is the allocation of functions to court-martial personnel in an attempt to effectuate the two basic approaches underlying the exclusion of involuntary statements. One logical possibility in dealing with a confession alleged to have been made involuntarily is simply to permit its contents to go before the members of the court—with advice from the law officer to the effect that they should disregard it if they find either that it is untrustworthy, or that the circumstances surrounding its taking infringed the privilege against self-incrimination. This procedure, we believe, would be distinctly undesirable, for the reason that the triers of fact—once having heard an account of the confession or other statement—might, despite the law officer's advice, find it difficult to erase the knowledge from consciousness. Moreover, to place the evidence before the members of a court without a definite ruling by the law officer on the question of admissibility would violate the mandate of Article 51(b)—that is, the rule that the law officer of a general court is to rule "upon any interlocutory question." The admissibility of evidence is, of course, the very prototype of an interlocutory question.

If, however, the law officer must, under the Code, rule on the admissibility of this evidence—its fitness, to be heard by the court—what role is left to the tribunal's members? Since Article 51 (b) provides that the ruling of a law officer is to be regarded as "final," court members are precluded from re-examining the issue of admissibility. On the other hand, it is the members—and *not* the law officer—who must ultimately weigh all admitted evidence for the purpose of determining the accused's innocence or guilt. This complex of received evidence will necessarily include whatever extrajudicial statement may have been made by the accused. Therefore, this, too, must be weighed by the court —and it would be improper under the Code for the law officer to attempt to limit the court in the exercise of this function.

It has been remarked earlier that the exclusion of involuntary statements was grounded originally on their probable untrustworthiness.

Conversely, a voluntary confession is often referred to as "the highest order of proof." Since the voluntariness of a statement equates to its trustworthiness —which in turn has to do with its weight as evidence—the issue of *voluntariness* must not be placed beyond the consideration of the court's members.

The real problem arises when the law officer admits a confession in evidence as having been made voluntarily, while the members of the court reach a different conclusion. Under those circumstances, are they entitled to consider the possible truthfulness of the extrajudicial statement which they, but not

**739**

the law officer, have found to be an involuntary one? For instance, if ·the accused were to report the hiding place of the murder weapon—a fact known only to one involved in the crime—then it is clear that his statement would reliably support certain incriminating inferences, regardless of whether it had or had not been made voluntarily. Would the members of a court-martial be entitled to consider such inferences?

This question becomes of special importance in the area of instructions. If the only issue properly before the court is the truthfulness—the credibility—of a confession received in evidence, then simple instructions adapted to that question will suffice. If the court's members cannot properly consider a confession which they deem involuntary, regardless of its truthfulness, then the defense is entitled—on request at least—to an instruction which will so inform them. It would seem that this instruction should be phrased somewhat along the following lines: "If you find that the privilege of the accused not to incriminate himself was violated, or that a confession was obtained from him involuntarily, you may not accord that statement any sort of consideration in your deliberations although it has been received in evidence." Moreover, and even without objection, the accused, on the analogy of the cases having to do with character evidence, would be entitled to protection against an instruction which prevented court members from discarding the accused's confession completely from their minds if they found it to be involuntary —this without regard to its weight. The instruction in the instant case would thus be highly questionable for the reason that its language might well tend to block the court from performing its duty in this regard.

In light of the provision of the Uniform Code that the ruling of the law officer as to admissibility is "final" it would be difficult to justify empowering court members to reject a confession, regardless of its credibility, on the single ground that it was involuntary, and therefore incompetent as evidence. Nor is there aught in the civilian precedents which would lead to such a result.

Of special interest in this latter respect is the analysis of the proper division of functions between civilian judge and jury made by Professor E. M. Morgan, Jr., a leading scholar in the field of evidence, and as well a chief draftsman of the Uniform Code of Military Justice. In an early article he commented:

"If evidence as to both A and B is submitted to the jury, and the jurors are instructed to cast out that as to A unless they find B, several very practical objections at once obtrude themselves. Such a procedure will enormously complicate the work of the jury. It will not do to disregard realities. The jury is a casual group taken from the body of the citizenry. Jurors are compelled to perform their duties in rooms in which vile ventilation, inadequate acoustics, and limited light make keen, accurate work especially difficult. They are usually required to rely upon their memories unaided by memoranda. A trial may occupy days or weeks or even months. It takes great faith to expect jurors to distinguish between bare assertions, argument, and objections of counsel, on the one hand, and evidence on the other, and to rely only on the evidence as a basis for their verdict. To require them at the outset of their deliberations to separate the questions of admissibility from the ultimate questions, to apply to the former the testimony touching their foundations, and to reach rulings thereon prior to a consideration of the merits, is to demand the practically impossible. Furthermore, the only method of ascertaining whether the jury really went through the form of complying with such instructions would be the submission of special questions. Even assuming that the answers to these questions were made final, such a process would add enormously to the opportunities to assign errors on appeal or motion for new trial.

"But a more fundamental objection exists. If the jury be credited with the capacity to perform the task

of ruling intelligently upon such a mass of testimony—a capacity which every judge and trial lawyer knows that it does not possess—can it be credited with the capacity to wipe its mind clean of the objectionable testimony which it has heard or seen, and rest its decision upon the admissible evidence only? It is a familiar fiction that the trial judge in equity cases regularly performs this psychological feat. But there is no trial lawyer who does not rejoice when he gets such a judge to admit *de bene* a piece of evidence which is emotionally potent in his favor, even though it may later be formally stricken, and no trial lawyer against whom it is received who is not convinced that the trial judge is purporting to strain out the water of prejudice from the milk of legitimate evidence through a totally ineffective mental sieve. A mind trained to sift evidence may substantially accomplish even so difficult a task; but to expect the unskilled minds of jurors to do so is little short of ridiculous.

"In many instances, moreover, the chief objective of the exclusionary rule would be destroyed. Where the exclusion is based on a policy of protection of an interest, nothing could be more absurd than to violate the interest and then to instruct the jury to repair the damage by disregarding the wrongfully extracted evidence. If a lawyer is compelled to repeat in open court the confidential communications of his alleged client, and the jury is told to disregard them in case they find the relationship exists, the harm of disclosure is beyond remedy. In this respect certainly, the only sensible option must be between a decision of the preliminary questions by the judge, and an interlocutory verdict thereon by the jury.

"On theory, then, where the relevancy of A depends upon the existence of B, the existence of B should normally be for the jury; where the competency of A depends upon the existence of B, the the [sic] existence of B should always be for the judge." [43 Harv LR 165, 168 (1929).]

Later he wrote concerning involuntary confessions:

". . . The courts which favor making the jury in effect a court of review of the judge's finding, do so on the theory that they are favoring the accused by giving him a second tribunal. Whether this will not operate to make the trial judge more liberal, if not more careless, in passing on the preliminary issue since he must later submit it to the jury if he allows them to hear the evidence, is at least open to debate. This procedure also may be misunderstood as indicating that the historic rule is at best a tolerated infringement of the jury's proper function; and may lead to the view which is suggested in a number of cases and appears to have been definitely taken in Arkansas, namely, that where the evidence on the preliminary question is in dispute, the evidence is to be admitted and the jury charged to use or disregard it according to their finding on the issue of the voluntary character of the confession. Thus an illogical attempt to give the accused an added benefit may be but a step in a process of subtracting from what he already enjoys." [59 Harv LR 481, 488 (1946).]

And Dean Wigmore comments to similar effect:

"To say that it is a question for the jury may mean one of two things. It may mean that the confession goes in any case to the jury to accept or to reject or to give such weight as the jury chooses; this practically abolishes all the foregoing limitations, and would be in this aspect a desirable rule. But it may and commonly does mean that the jury may be allowed to *measure it by the foregoing legal tests,* and to reject it as a judge would if the tests are not fulfilled. This is decidedly improper; first, because it makes abject surrender of the fixed principle (*ante,* §§ 12, 487, *post,* § 2550) that all questions of admissibility are questions of law for the judge only; secondly, because, in particular, the confession-rules are artificial, based on

average probabilities or possibilities only, and do not attempt to measure the ultimate value of a given confession, and the tribunal which is to weigh all evidence finally ought not to be artificially hampered by them; thirdly, because the jury is not fammiliar enough with them to attempt to employ them. Nevertheless, many Courts today hold that, after the judge has applied the rules and admitted the confession, the jury are to apply them again, and *by that test* may reject it. This unpractical heresy fails to appreciate the elementary canon of admissibility, and in that aspect its judicial extension has been a discouraging circumstance." [Wigmore, Evidence, 3d ed, § 861.]

The Utah Supreme Court—overruling a number of its past decisions—exhaustively discussed the allocation of responsibility between judge and jury in State v. Crank, 105 Utah 332, 142 P2d 178. The following comments are of special interest:

"The law relative to just what part the jury may play in determining whether a confession was voluntary is in an unhappy state of flux. There is no uniformity in the decision. Roughly speaking they may be placed in three classes. Some hold that the question is solely one of law for the court. States so holding are Alabama, Colorado, Illinois, Florida, Maryland, Indiana, Minnesota, Mississippi, Montana, New Jersey, North Carolina, North Dakota. The second group of jurisdictions have decisions which seem to hold that the question of voluntariness of a confession should be submitted to the jury for a determination of whether it was sufficiently voluntary for them to consider it as evidence in making their conclusion as to his guilt. In many of these states the question has not been squarely passed upon, and what is said in the opinions is largely dicta based upon the practice in vogue. We shall examine these cases later. The states which may be placed in this group are: Arizona, Arkansas, California, District of Columbia, Georgia, Iowa, Kentucky, Michigan, Nebraska, New Mexico, New York, Pennsylvania, South Carolina, South Dakota, Texas, Utah. The third group of jurisdictions are those in which a rule or established practice cannot be determined from the decisions, because of the varied ways in which the question came before the court, and each case seems to stand on its own bottom. Such jurisdictions include the Federal Courts, District of Columbia, Kansas, Maine, Missouri, Nevada, Ohio, Oklahoma, Oregon, Rhode Island, Washington, West Virginia, Wisconsin, and Wyoming.

"The differences in the decisions however, are often more apparent than real. The decisions in the first group, which we think state the better and more practical rule are well illustrated by the case of Brister v. State, 26 Ala 107, where the court says: 'Whenever a confession is admitted by the court, the jury must take it; they cannot reject it as incompetent; they are confined to its credibility and effect. Either party has the right to prove to the jury the same facts and circumstances which were legally proved to the court when it was called upon to decide the question of competency, and all other circumstances applicable to the confession or having any legal bearing on its credibility or effect; and if, in view of all the facts and circumstances proved, the jury entertain a reasonable doubt as to the truth of the confession, they may disregard it, in their decision of the case, as being incredible, although they cannot reject it as incompetent. . . . If they entertain no such reasonable doubt, they ought not to disregard it, although they may believe it was obtained by the appliances of hope or fear to the mind of the prisoner.' And by the words of the Colorado court in Osborn v. People, 83 Colo 4, 262 P 892, 901, where it is said: 'This court, on repeated occasions, has said that, to be admissible, a confession must be voluntary, and that the question of admissibility is for the court. . . . The jury, of course, is not permitted to pass upon the question of admissibility. The

court having admitted the confession in evidence, it is for the jury to determine the weight to which it is entitled. The jury may accord to it great weight, little weight, or no weight at all, depending upon the circumstances surrounding the making of the confession. . . . If this is true, it follows that where the court is in doubt whether the confession was voluntary or not, the evidence may be admitted, leaving it to the jury to determine the weight to which it is entitled under all the circumstances.' And in Hauk v. State, 148 Ind 238, 46 NE 127, 47 NE 465, 466, the court after a careful consideration of the question said: 'When the court holds the confession admissible as evidence, it must be received by the jury, and it is not within their province to reject it as incompetent. The credibility, effect, or weight to which it is entitled, as in other evidence, is a question which the jury has the right and must determine for themselves. In deciding this question, they may and ought to look to and consider all of the facts and circumstances under which the alleged confession was made. The credibility of the confession being a legitimate subject of inquiry upon the part of the jury, it may be impeached by the defendant in any authorized manner. While the jury may believe it to have been involuntarily made by reason of the hopes or fears of the confessor having been unduly excited, still, if there is evidence which confirms or corroborates it, so as to impress the jury with the belief of its truth to their satisfaction, in that event they would not be justified in rejecting the confession solely upon the ground that they believed it to have been involuntarily made.' " [Page 185.]

An examination of the Rules of Evidence, recently drafted by the National Conference of Commissioners on Uniform State Laws, makes clear that this body subscribes to a similar view. Rule 63(6) requires a finding on the part of the judge that an accused's confession was not made under circumstances which would serve to render the statement involuntary. Rule 8, however, signifies that the jury retains the task of passing on the "weight or credibility" of the confession—and, by negative implication, is without authority to pass on anything else.

The allocation of responsibility between law officer and court members was dealt with at length by Judge Latimer in United States v. Gibson, 3 USCMA 746, 14 CMR 164. There he emphasized, with special reference to the authority of Dean Wigmore, that the law officer must be held to enjoy the final word in the realm of admissibility. Under this view, if the law officer rules that whatever warning is demanded by Article 31 was given an accused before the making of an extrajudicial statement, thereafter court members are barred from rejecting that statement merely because of their conclusion that a required warning had not been given. Of course, if the statement were assailed as involuntary, the presence or absence of a warning would constitute a circumstance which the court could properly consider as bearing on voluntariness—and thus on trustworthiness. In Gibson, of course, the majority of this Court did not find it necessary to decide the questions discussed by Judge Latimer—for the reason that its members held that, as a matter of law, no issue of failure to warn was raised for the law officer, or anyone else for that matter, to determine. No sort of rejection of the view proposed by Judge Latimer in that case was either intended or effected.

With proper attention to the wording of the Code and the several declarations of scholarly authorities in the field of evidence, we are sure that members of a court-martial labor under no more than a single task with respect to a confession assailed as involuntary. That chore is to determine the weight and credibility of the confession with due recognition of the human experience indicating that involuntariness diminishes the trustworthiness of a statement. If the court-martial concludes that the confession was involuntary, it is free in its deliberations on the guilt or innocence of the accused to disregard it entirely as being totally

**743**

unworthy of belief and without weight or credit. Of course—and ▪ regardless of the court's determination in this respect—the confession remains a part of the record of trial. It follows that the law officer's admissive ruling is subject to review, and may well result in the reversal of any conviction which may have been secured.

Perhaps clarity will be served by a comparison of the present problem with that involved in the admissibility of evidence said to have been procured by means of an illegal search and seizure. The protection against illegal searches is a fundamental guarantee, embodied in the Fourth Amendment to the Constitution, in precisely the same manner as the concept of "due process" and the privilege against self-incrimination are assured by the Fifth. Yet, despite the fundamental character of the right involved, a claim that evidence was illegally seized is not one which may properly be considered by a jury in the process of weighing guilt or innocence. Instead, that claim is regarded as relating to admissibility only—and so falls within the exclusive province of the judge.

Unlike the voluntariness of a confession—which distinctly touches trustworthiness—the manner in which documentary or real evidence is obtained will seldom, if ever, affect its reliability. Since the jury's function is confined to the weighing of the evidence admitted for its consideration, there is no basis for permitting the legality of a search to become a jury issue. In other words, the basic point is that it is not at all demanded, in terms of procedural requirements, that a right—regardless of its importance—be of concern both to a judge and to the jury. The uniqueness of the right to be protected against an involuntary confession lies in the fact that the matter of voluntariness bears ultimately on the weight of evidence.

It should be noted that to adopt this approach—regarded by Professor Morgan and Dean Wigmore as ▪ the orthodox one—is sound not only in theory, but in terms of easy administration as well.

**744**

When involuntariness is an issue, it will generally suffice to advise court members to this effect: "Gentlemen, you have heard evidence bearing on the voluntariness of the statement I have admitted in evidence. It is recognized that involuntary statements are often untrustworthy and unreliable. Therefore, the voluntariness of the statement before you here constitutes a matter you should consider in determining what weight, if any, you are to give to that statement. In deciding this latter question, you should be affected in no way by the circumstance that I have permitted this statement to be received in evidence." If a failure to warn—*in addition to* involuntariness—is in issue, the law officer properly may add: "The circumstances surrounding the giving, or the failure to give, a warning to the accused of his right to remain silent are among those to be considered in determining whether the statement I have admitted in evidence was made voluntarily or the reverse."

In dealing with the complicated subject of involuntary confessions, the Manual for Courts-Martial, United States, 1951, provides:

"The ruling of the law officer (or of the special court-martial) that a particular confession or admission may be received in evidence is not conclusive of the voluntary nature of the confession or admission. Such a ruling merely places the confession or admission before the court, that is, the ruling is final only on the question of admissibility. Each member of the court, in his deliberation upon the findings of guilt or innocence, may come to his own conclusion as to the voluntary nature of the confession or admission and accept or reject it accordingly. He may also consider any evidence adduced as to the voluntary or involuntary nature of the confession or admission as affecting the weight to be given thereto." [Paragraph 140a.]

It is believed that this wording only imperfectly embodies the intendment of the Code. The statement is wholly correct in suggesting that the law officer's ruling is final as to admissibility—but

definitive only as to that. However, the succeeding sentence, indicating that each member may "accept or reject" the confession or admission, suggests in some degree that admissibility may properly be the subject of relitigation by the court—a reading which would, of course, contradict impermissibly the Code's purport. The passage's final sentence, however, contains the gist and kernel of the court's role in the area of voluntariness—once the law officer has admitted in evidence an extrajudicial statement. That function is simply to determine—in light of all the evidence bearing on voluntariness—what weight, if any, should be accorded the statement. We must emphasize that any interpretation of the Manual which authorized court members to extend their action beyond that function would be invalid as conflicting with the Uniform Code.

## V

Within the framework of these concepts, how is the problem raised by the case at bar to be dealt with? Since an involuntary statement is necessarily inadmissible, the law officer—in ruling finally on the objection to admissibility—expressed by implication an opinion concerning the voluntariness of the confession offered here. The opinion was not a gratuitous one; indeed its expression was essential to a performance of his duty to dispose of interlocutory matters. Yet even a reasonably dull court member could have inferred readily and correctly the nature of the law officer's view with respect to voluntariness.

It is clear that this obvious inference would operate to the detriment of the accused, if the members of the court-martial felt in any way precluded thereby from re-examining the voluntariness of the admitted confession, in order to determine whether it was made under conditions likely to challenge trustworthiness. However, the likelihood of this detriment will be totally dispelled if the court is specifically advised by the law officer that its members are required to determine voluntariness, as it bears on trustworthiness—without regard to any expression of views presented by him, either expressly or impliedly. Unfortunately the law officer here was not so explicit in his guidance. Consequently, we must inquire whether he went far enough—or whether, on the other hand, his instructions were either inadequate or misleading.

It will be seen that, in his advice to the court, the law officer selected the incriminating pretrial statement of the accused, which had been admitted over defense objection, as a specific subject for discussion. With the attention of the court centered on that item of evidence, he informed them that the weight and credibility of that statement were for its members to determine. It is apparent that the only matter which—the defense contended—might have impaired the statement's trustworthiness, and its claim to credence, was that of involuntariness. From having been adjured to direct specific attention to the possible unreliability of this extrajudicial statement, the members of the court must have understood that they were to consider carefully the circumstances of the document's execution, with an eye to determining whether this was an untrustworthy confession extorted from the accused—or whether it was one freely supplied by him, and therefore, without question, trustworthy.

We observe, too, that the law officer, near the end of his charge, advised the court that the final determination of the weight of the evidence and the credibility of the witnesses rested solely upon its members, and that they were to disregard any sort of comment or statement by him which might seem to indicate a view of the accused's guilt or innocence. Within the thrust of this instruction, there was present the connotation that—although he had expressed the implicit opinion that the accused's statement *was* voluntary—the court was to disregard this view. We are sure that—in light of all of the instructions—the court was under no erroneous impression regarding the issues it was their right and duty to decide.

To the extent that clarification of the

law officer's advice was desirable, the defense counsel was under a clear duty to request this action. ■ United States v. Johnson, 3 USCMA 447, 13 CMR 3; United States v. St. Pierre, 3 USCMA 33, 11 CMR 33; United States v. Long, 2 USCMA 45, 6 CMR 45; United States v. Jenkins, 1 USCMA 329, 3 CMR 63. Defense counsel in this case not only failed to object to the law officer's instructions, he declined expressly to take advantage of that functionary's specific invitation to comment on the charge as given. Certainly defense counsel's evaluation of the instructions—now urged as a ground for reversal—is entitled to weight at the appellate level. It is true that the law officer failed to achieve perfection in his advice to the court—although it is distinctly arguable that his instruction was superior to one which did no more than quote the somewhat confusing language of the Manual, recited earlier in this opinion. Under these circumstances, we find no hesitancy in holding that the failure of defense counsel to complain is fatal to the present assertion of prejudice. Hawkins v. United States, 158 F2d 652 (CA DC Cir), cert den 331 US 830, 91 L ed 1844, 67 S Ct 1347.

## VI

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

Judge Brosman sets forth a premise which has been accepted by a number of courts and some text-writers and even though it ■ may be conceptually sound, it seems to me to be a step backward when applied in military law. In United States v. Gibson, 3 USCMA 746, 14 CMR 164, I concluded that when the law officer ruled that the warning requirement of Article 31, 50 USC § 602, had been satisfied, that ruling was beyond the reach of the court-martial members. That hardly meets squarely the present issue. Certainly considera-

tion of admissions and confessions obtained by possible coercion or undue influence by court-martial members when determining the guilt or innocence of the accused may pose different problems from the weighing of statements given by an accused without warning. The difference seems to be recognized by the provisions of the Manual which deal specifically with the admissibility and consideration of involuntary confessions and admissions.

The author Judge has quoted paragraph 140a of the Manual and it is repeated here solely as a matter of convenience. It reads as follows:

"The ruling of the law officer (or of the special court-martial) that a particular confession or admission may be received in evidence is not conclusive of the voluntary nature of the confession or admission. Such a ruling merely places the confession or admission before the court, that is, the ruling is final only on the question of admissibility. Each member of the court, in his deliberation upon the findings of guilt or innocence, may come to his own conclusion as to the voluntary nature of the confession or admission and accept or reject it accordingly. He may also consider any evidence adduced as to the voluntary or involuntary nature of the confession or admission as affecting the weight to be given thereto."

I do not find any real inconsistency between this paragraph and Article 51(b) of the Code, 50 USC § 626. The Code provides that the rulings of the law officer on interlocutory questions, with two exceptions, are final. The admissibility of evidence is an interlocutory question and a ruling of a law officer on the competency of a confession is not included in the exceptions to finality. Assuming he rules rightly in admitting a confession, that paragraph states the whole inculpatory statement may be rejected by a court-martial member if he concludes it was unlawfully coerced or illegally induced. A fair interpretation of the language would permit a member to determine the voluntariness of a confession as his

first order of business during deliberations. If he finds it to be involuntary he may reject it in its entirety while if he concludes that it was given freely and voluntarily, he may accept it at face value. But my construction of the language used leads me to believe that the framers of the Manual intended to say that where a court-martial member concludes that a confession is involuntary, he is not thereafter free to assess its trustworthiness and, in turn, the weight to be accorded to it. If they did not intend to so state, then I am at a loss to understand why the inconsistency in the language. It makes little sense to say a confession can be rejected and yet weighed for its truthfulness and if found not to be false, it may be used to support a finding. At the very least that would in all instances result in an acceptance of the evidence and an assessment of its truthfulness. If it were corroborated by some other evidence it would never be rejected. I do not say a contrary interpretation is impermissible but it very effectively chisels away a right running to the accused without any compensating benefit.

One further reason which impels me to shy away from the asserted interpretation is that it is contrary to the construction which has been placed upon the Manual language by the military services, which construction is currently being followed by them. The Department of the Army Pamphlet No. 27–9, The Law Officer, August 1954, Appendix XVII, page 127, offers the following form instruction as a guide to law officers in this area:

". . . Each member of the court, in your deliberation upon the findings of guilt or innocence, may come to your own conclusion as to the voluntary nature of the statement. You may accept the statement as evidence only if you determine that it was voluntary. If you do not determine beyond a reasonable doubt that the statement was voluntary, *you must reject it and disregard it as evidence in the case.*" [Italics supplied.]

Many jurisdictions use the same form of charge to a jury and if the armed services find the instruction acceptable and they are willing to be liberal to an accused, I see no point in requiring them to narrow their interpretation to his detriment.

Now for the reasons which lead me to concur in the action taken by the Court here. To dispose of this case, I need go no further than to hold that defense counsel here effectively waived any question of the accuracy of the law officer's instructions concerning this confession. A cursory reading of the instruction given discloses that it would meet minimal requirements if the word "voluntariness" was substituted for the word "credibility." Defense counsel expressly declined to object to the charge as given and failed to mention the deficiency now asserted as grounds for reversal.

Where an instructional issue involves only a matter of clarification or amplification, I am unwilling to permit defense counsel to raise it for the first time on appeal.