UNITED STATES, Appellee

v

ROBERT P. LACY, Basic Airman, U. S. Air Force, Appellant

10 USCMA 164, 27 CMR 238

No. 12,085

Decided January 30, 1959

*Major Dwight R. Rowland* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Sam F. Carter* and *Major Edmund B. Sigman.*

*Captain Lawrence J. Gross* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused, before a special court-martial, pleaded not guilty to, but was found guilty of, being drunk and disorderly in quarters, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, and of using disrespectful language toward his superior noncommissioned officer who was then in the execution of his office, in violation of Article 91, Uniform Code of Military Justice, 10 USC § 891. He was sentenced to be discharged from the service with a bad-conduct discharge, to forfeit $50.00 a month for three months, and to confinement at hard labor for the same period of time. The convening authority approved but, pursuant to the advice of his legal advisor, the supervisory authority reduced the finding of using disrespectful language to wrongful use of provocative words, in violation of Article 117, Uniform Code of Military Justice, 10 USC § 917. He permitted the sentence as imposed by the court to stand, and thereafter the findings and sentence were affirmed by a board of review. We granted accused's petition for review to determine whether the officer exercising general court-martial jurisdiction erred in affirming the lesser offense.

In view of the nature of the issue, a full statement of the facts is unnecessary. Suffice it to say the evidence was sufficient to sustain the findings of guilt of both offenses. Furthermore, the instructions were complete with the exception that the president of the court did not instruct the members on intoxication as it affected the element of knowledge in the offense charged under Article 91. He did, however, inform the court it would be required to find beyond a reasonable doubt that the accused knew the person to whom the provocative language was directed was his superior noncommissioned officer. It was the failure to mention intoxication in regard to this instruction which prompted the staff legal officer to recommend a reduction in the finding.

Article 117 of the Code provides:

"Any person subject to this chapter who uses provoking or reproachful words or gestures towards any other person subject to this chapter shall be punished as a court-martial may direct."

The parties have rather extensively argued the question whether knowledge that the person to whom the provoking words were uttered is subject to the

**165**

Code is an element of the crime proscribed by Article 117. The Government calls our attention to the well-reasoned board of review opinion in United States v Bowden, 24 CMR 540, as authority for the proposition that that sort of knowledge is not an essential element of that offense. For reasons which will hereinafter appear, we conclude it is unnecessary for us to express an opinion on that concept.

In the early case of United States v St. Pierre, 3 USCMA 33, 11 CMR 33, involving the assault of an officer, Chief Judge Quinn, in writing for a majority of the Court, stated:

". . . We are confronted in this case with the same difficulty of determining whether knowledge is an essential element, or, the lack thereof, an affirmative defense. That difficulty is of little importance, however, for we have firmly declared our position that whenever the evidence reasonably raises the factual issue of knowledge, instructions must require a consideration of that question by the court in the course of its deliberations. From the standpoint of prejudice to the accused, therefore, any error resulting from a failure to instruct on the subject of knowledge, requires reversal, only if the evidence is sufficient to raise it as a factual issue. United States v Charles F. Simmons, supra; United States v Wallace (No. 988), 2 USCMA 595, 10 CMR 93, decided June 3, 1953; United States v Majia (No. 1289), 2 USCMA 616, 10 CMR 114, decided June 12, 1953. Nothing in the instant case requires a more definitive resolution of the problem of special knowledge created by the Manual's ambiguous provisions."

Judge Brosman did not concur outright because it was his belief that knowledge of status and rank in that crime was not an element of the offense but rather was an affirmative defense which was available to the accused. However, when offenses have been charged under Article 90 or 91, Uniform Code of Military Justice, 10 USC § 890 or 891, this Court has never differed on the necessity of instructing on intoxication when it is shown to have reached a degree sufficient to raise lack of knowledge as a factual issue.

For the purpose of the case at bar, we will assume the same concept should be applied to the offense proscribed by Article 117, but we reach the conclusion that the issue was not raised. The evidence for the prosecution was presented by stipulation. There is no question it is sufficient to support accused's conviction of the drunk and disorderly charge, and the disrespectful language was uttered at substantially the same time. But the accused in his sworn testimony on the witness stand quite clearly established that, even though he was intoxicated, his mental faculties were not sufficiently dulled so as to interfere with his capacity to identify the persons involved. We, of course, have no way of knowing the exact extent intoxication may have interfered with this accused's normal mental processes, but he presents us with a clear picture that at least he was well aware of the military status and identity of the person with whom he was dealing. While on the witness stand, he testified to returning to his station in the early afternoon of the day involved. He remembers going to his barracks, talking with two airmen whom he identifies by name, waiting until approximately the time he was to report for duty, and then going to the orderly room to do so; he recognized the charge of quarters and understood his order to return to his room; he recalls the time and details of his return to get the charge of quarters to reconsider his order; he comprehended that the charge of quarters was calling an officer whom he established to be Captain Reed; and he explained that he overheard and understood a telephone conversation in which Air Police personnel were summoned to escort him to the stockade. It was one of the apprehending policemen to whom he directed his provocative and obscene language.

At the time the accused was sworn as a witness in his own behalf, he did not limit his testimony to any particular offense but, when asked by trial counsel

whether he recalled making the obscene statements to the Air Policeman, his counsel objected on the grounds that the question went beyond the scope of direct examination. The president sustained the objection and the record is, therefore, void of any evidence by the accused that he did not know he was provoking a fellow airman. With the accused testifying he knew and understood all that was going on, it is readily apparent why no one at the trial level considered lack of knowledge was raised as an issue.

On examination by a member of the court, accused parried questions as to whether he was intoxicated by stating he had been drinking. That is as far as he would admit any possible interference with his capacity to cerebrate, and at no time did he claim he was so drunk that he either did not remember or could not recall the incidents which occurred. Such being the state of the record, we must, in order to determine if an issue was raised, measure accused's mental capacity by his recollection of other events. He is, of course, the best witness as to his mental perception and his knowledge of persons and places. In evaluating the evidence, we have the testimony of prosecution witnesses that the accused gave the appearance of being extremely intoxicated. Parenthetically, we might note that, absent any testimony from him, it could be inferred from the Government's evidence that his mental faculties were seriously impaired. However, we have that inference demolished by the accused's own judicial admissions. We find from his testimony that he places himself on a military base in his own quarters where he would be likely to encounter only military personnel. He identifies the persons with whom he carried on conversation as being airmen. He was accurate with respect to time; he knew the subjects under discussion; he was able to name the individuals with whom he conversed, and he was aware of their assignments; he encountered no difficulty in knowing and understanding the name of the squadron administrative officer; he comprehended that he must report for extra duty; and he understood air policemen had been contacted

to take him into custody. With his mental capacity so unimpaired that he could know and understand the intimate details he mentions, we find it unreasonable to conclude there is evidence in the record which suggests reasonably that when he made his insulting remarks to the air policeman who was escorting him to the brig, he was intoxicated to the extent he did not know he was addressing a member of the Air Force. United States v Sharp, 5 USCMA 580, 18 CMR 204; United States v Christensen, 4 USCMA 22, 15 CMR 22; United States v Benavides, 2 USCMA 226, 8 CMR 26; and United States v Hagelberger, 3 USCMA 259, 12 CMR 15. At this point, we might suggest parenthetically that accused's present dilemma is occasioned by a change in theory. At trial he sought to convince the court he was not drunk and disorderly, and now he would have us disregard his sworn testimony and find he knew not what he was doing.

In bringing the issue into its proper perspective, we recognize that counsel for the accused contend the staff judge advocate erred when he stated proof of knowledge that the victim of the disrespectful language is a person subject to the Code was not material. As previously suggested, the defense argue that mental capacity to know the military status of the victim is an element of the offense and that the staff judge advocate, having conceded intoxication, was mistaken about the law. The argument then proceeds on the hypothesis that the convening authority was the victim of misadvice and his action should not be affirmed. Conceding, for the purpose of this point only, that the staff judge advocate erred on the law as to the elements of the lesser offense, in view of our interpretation of the evidence, we believe that nevertheless accused cannot be heard to question his over-all conclusion. Since the court members were instructed they must find accused knew the person to whom he directed the disrespectful and provocative language to be his superior noncommissioned officer, and they did so find, and since, as a matter of law, by reason of accused's judicial admissions,

the evidence did not reasonably raise any issue of lack of knowledge caused by intoxication, the staff judge advocate could very well—and properly—have recommended to the convening authority that the original finding be approved. Under accused's theory at trial and his supporting evidence, lack of knowledge of the military status and grade of the victim was not raised reasonably. Accordingly, if the staff legal officer erred in his statement of the law, the error was beneficial to the accused and he is in no position to complain.

For the reasons stated, we affirm the decision of the board of review.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in the result):

I concur in the result because I believe knowledge that the victim is subject to the Code is not an element of the offense of using provoking or reproachful words or gestures under Article 117, Uniform Code of Military Justice, 10 USC § 917. United States v Bowden, 24 CMR 540; cf. United States v Matheny, 10 CMR 519; United States v Williams, 15 CMR 535.