UNITED STATES, Appellee

v

JAMES L. SHAW, Private First Class,
U. S. Marine Corps, Appellant

13 USCMA 144, 32 CMR 144

No. 15,707

June 8, 1962

Lieutenant Colonel M. G. Truesdale, USMC, argued the cause for Appellant, Accused. With him on the brief was Lieutenant Robert C. Watson, USNR.

Commander Benjamin H. Berry, USN, argued the cause for Appellee, United States. With him on the brief was Captain James W. Grant, USN.

## Opinion of the Court

FERGUSON, Judge:

Tried by special court-martial, the accused was found guilty of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, and sentenced to bad-conduct discharge, confinement at hard labor for four months, forfeiture of $55.00 per month for four months, and reduction to the grade of private. Intermediate appellate authorities affirmed, and we granted accused's *pro forma* petition for review, specifying the following issues:

"1. Whether the accused was prejudiced by the rejection of his plea of guilty to the lesser included offense of wrongful appropriation.

"2. Whether the President shifted the burden of proof on intoxication as affecting specific intent in instructing the members to find the accused not guilty if they should '. . . feel that the accused was not capable of entertaining a specific intent.'"

### I

At the outset of his trial, accused sought to enter a plea of guilty to the lesser offense of wrongful appropriation, also in violation of Code, supra, Article 121. The president of the special court-martial refused to accept the plea and, without explanation, stated that the "court will enter a plea of not guilty to the specification and the charge." In accordance with the president's instructions, the trial counsel proceeded to present his case.

From the evidence, it appears that accused, one Giles, and other Marines spent the evening of October 17, 1961, "alley hopping" in a Japanese town. Giles, accused, and one Short jointly drank a bottle of whiskey. According to accused's pretrial statement, Short and Giles consumed "the biggest part" of the bottle. Accused separated from the others but eventually made his own way back to their military station. There, he found Giles, fully clothed, drunk in bed. He assisted him in un-

**145**

dressing and, in the process, removed from Giles' wallet the sum of money allegedly stolen.

Ten minutes later, the accused denied the theft when queried by the victim. However, he thereafter executed a voluntary and detailed written confession to the offense. At the trial, accused judicially adopted this confession in his testimony and stated that he "was under the influence of alcohol" when he "had taken it wrongfully."

At the conclusion of the trial, the president of the court-martial advised the members of the elements of the offense charged, those of the lesser offense of wrongful appropriation, and gave the mandatory charge required by Code, supra, Article 51, 10 USC § 851. In addition, he also instructed the court members that "involuntary intoxication" which deprived the accused of the mental capacity to entertain a specific intent was a defense to larceny and, "If you feel that the accused was not capable of entertaining a specific intent as to this offense, you must find him not guilty of this offense."

## II

We need not reach the question whether the president arbitrarily and erroneously rejected accused's plea. Assuming he did so, the difficulty we encounter in this case is finding any prejudice. Appellate defense counsel argue that harm is present, as the court could not hear the plea of guilty to wrongful appropriation made and thereafter realistically apply the rules regarding the presumption of innocence and burden of proof. This position, of course, overlooks the fact that its adoption would mean that no accused would ever have the right to plead guilty to a lesser offense, for the court could never thereafter measure his guilt properly. And the argument is entirely inconsistent with defendant's position that the president erred in rejecting the plea originally. In short, defendant's contention is that the court could neither accept nor reject such a plea and, regardless of its course of action, reversal must follow. We wholly differ with this contention and prefer the declaration

**146**

of the Alabama court in Arrington v State, 35 Ala App 205, 45 So 2d 9 (1950), at page 9:

"The fact that the adjudication of guilt was based on the verdict of the jury, under the circumstances disclosed by the record, could in no manner inure to the prejudice of the defendant."

We hasten to add that we are aware of the value to an accused of his entry of a plea of guilty as a factor in mitigation of punishment. See United States v Rake, 11 USCMA 159, 28 CMR 383; and United States v Babers, 11 USCMA 163, 28 CMR 387. Here, the accused actually entered his plea in the presence of the court members. Thus, they must have been aware of his desire to save the Government time and expense and possibly take his first step toward the path of rehabilitation, for they obviously knew the case was contested only because of the president's action. More importantly, however, the board of review considered the effect of the president's action in connection with the penalty, but found no prejudice "in the light of . . . the sentence adjudged by the court."

Recognizing this appellate reassessment, we are also unable to perceive that the rejection of accused's plea of guilty constituted error prejudicial to his substantial rights. Code, supra, Article 59, 10 USC § 859.

## III

Turning to the second question before us, we need not pause to discuss the patently erroneous instructions on the effect of "involuntary" intoxication. If an erroneous instruction is given with respect to a matter actually not in issue, the error cannot be deemed prejudicial. United States v Amie, 7 USCMA 514, 22 CMR 304. We are certain that the question of the effect of accused's intoxication upon his capacity to entertain the specific intent involved in both larceny and the lesser offense of wrongful appropriation was not fairly raised by the evidence in this case.

The test by which we must measure

the existence of an affirmative defense is whether there is in the record some evidence from which the fact finders ·might reasonably conclude that the defense existed. United States v Black, 12 USCMA 571, 31 CMR 157; United States v Moore, 12 USCMA 696, 31 CMR 282.

In the instant case, the sole evidence regarding accused's state of sobriety is his declaration at the trial that he was "under the influence" at the time of his offense and his pretrial statement that he drank a portion of a bottle of whiskey, the "biggest part" of which was consumed by others. He recalled the events which had transpired in detail and made no effort to claim that he was befogged mentally by his intake of the intoxicant. In the face of such testimony, it is difficult to see how any fact finder could reasonably conclude that there was a reasonable doubt concerning accused's mental capacity to entertain the requisite intent.

In United States v Sharp, 5 USCMA 580, 18 CMR 204, we also rejected the argument that an issue was raised concerning the legal effect of accused's involuntary intoxication. There, the only evidence was that he had been "drinking beer." And in United States v Lacy, 10 USCMA 164, 27 CMR 238, we similarly concluded that the defense was not placed in issue by accused's testimony that he "had been drinking." In like manner, nothing more than testimony that Shaw was "under the influence" is insufficient to place in issue the question whether he possessed the mental capacity to entertain the specific intent to steal. Accordingly, we find no prejudice in the president's instructions on intoxication.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge KILDAY concur.